**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MARIO CHALMERS, et al.,

     Plaintiffs,

     v.

NATIONAL COLLEGIATE ATHLETIC
ASSOCIATION a/k/a NCAA, et al.,

     Defendants.

Case No. 1:24-cv-05008-PAE-VF

<u>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**</u>
<u>**MOTION TO DISMISS**</u>

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................iii

INTRODUCTION ..........................................................................................................1

BACKGROUND ...........................................................................................................2

    A.    Prior suits ...................................................................................................3

          1.    *O'Bannon & Keller* ..........................................................................3

          2.    *Alston* ................................................................................................5

    B.    Ongoing Litigation .....................................................................................8

    C.    This Case .....................................................................................................8

ARGUMENT ................................................................................................................9

I.      PLAINTIFFS' CLAIMS ARE TIME-BARRED BECAUSE THEY CHALLENGE CONDUCT THAT OCCURRED AT LEAST EIGHT YEARS AGO ..............................................................................................................9

II.    PLAINTIFFS' CLAIMS ARE BARRED BY THE *O'BANNON* JUDGMENT AND THE *ALSTON* SETTLEMENT RELEASE ..............................13

    A.    *O'Bannon* Forecloses Plaintiffs' Claims for Injunctive Relief ...................13

    B.    *Alston* Forecloses Ten Plaintiffs' Claims for Damages. .............................15

III.   THE COMPLAINT FAILS TO STATE A CLAIM BECAUSE PLAINTIFFS HAVE NOT PLAUSIBLY PLEADED INJURY. ..........................17

    A.    Plaintiffs Must Plausibly Plead Injury-In-Fact and Antitrust Injury ..........................................................................................................18

    B.    Plaintiffs Have No Legally Protected Right of Publicity in Distributions of Sports Events. .................................................................20

    C.    Any Claim Under a State Law Right of Publicity Would Be Preempted by the Copyright Act. ...............................................................22

IV.   PLAINTIFFS' DERIVATIVE UNJUST ENRICHMENT CLAIM MUST BE DISMISSED. .........................................................................................23

CONCLUSION ...........................................................................................................24

## TABLE OF AUTHORITIES

**Cases**                                                                                 **Page(s)**

*A.Q.C. ex rel. Castillo v. United States*,
    656 F.3d 135 (2d Cir. 2011)................................................................... 10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).......................................................................... 9

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
    459 U.S. 519 (1983).......................................................................... 18

*Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*,
    805 F.2d 663 (7th Cir. 1986) ............................................................. 22

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)....................................................................... 9, 10

*Bellin v. Zucker*,
    6 F.4th 463 (2d Cir. 2021) ................................................................. 2

*Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*,
    402 U.S. 313 (1971).......................................................................... 15

*Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*,
    373 F.3d 296 (2d Cir. 2004)............................................................... 24

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
    429 U.S. 477 (1977)...................................................................... 18, 19

*Buttry v. General Signal Corp.*,
    68 F.3d 1488 (2d Cir. 1995)............................................................ 10, 11

*CBC Cos. v. Equifax, Inc.*,
    561 F.3d 569 (6th Cir. 2009) .......................................................... 18, 19

*Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*,
    56 F.3d 359 (2d Cir. 1995)................................................................. 14

*Choh v. Brown Univ.*, No, 3:23-cv-00305-AWT,
    2024 WL 4465476 (D. Conn. Oct. 10, 2024) ........................................ 12

*Cooper v. Fed. Reserve Bank of Richmond*,
    467 U.S. 867 (1984)...................................................................... 13, 14

*Deylii v. Novartis Pharms. Corp.*, No. 13-CV-06669,
    2014 WL 2757470 (S.D.N.Y. June 16, 2014) ........................................ 3

*Dora v. Frontline Video, Inc.*,
    15 Cal. App. 4th 536 (1993) .............................................................. 20

*Dryer v. Nat'l Football League*,
    55 F. Supp. 3d 1181 (D. Minn. 2014)................................................... 21

*Dryer v. Nat'l Football League*,
    814 F.3d 938 (8th Cir. 2016) ....................................................... 21, 22, 23

**Cases (cont.)**

*Expert Elec., Inc. v. Levine*,
 554 F.2d 1227 (2d Cir. 1977)..................................................................... 14

*Federated Dep't Stores, Inc. v. Moitie*,
 452 U.S. 394 (1981)................................................................................... 14

*Gary Friedrich Enterprises, LLC v. Marvel Enterprises, Inc.*,
 713 F. Supp. 2d 215 (S.D.N.Y. 2010)........................................................ 24

*Gelboim v. Bank of Am. Corp.*,
 823 F.3d 729 (2d Cir. 2016)...................................................................... 19

*Gionfriddo v. Major League Baseball*,
 94 Cal. App. 4th 400 (2001) ..................................................................... 21

*Haier Am. Trading, LLC v. Samsung Elecs., Co.*, No. 1:17-cv-921,
 2018 WL 4288617 (N.D.N.Y. Sept. 7, 2018) ...................................... 10, 12

*Harper v. Ercole*,
 648 F.3d 132 (2d Cir. 2011)...................................................................... 11

*House v. NCAA*,
 545 F. Supp. 3d 804 (N.D. Cal. 2021) ....................................................... 21

*In re Aluminum Warehousing Antitrust Litig.*,
 520 F. Supp. 3d 455 (S.D.N.Y. 2021)........................................................ 19

*In re Ciprofloxacin Hydrochloride*,
 261 F. Supp. 2d 188 (E.D.N.Y. 2003) .................................................. 10, 12

*In re Interest Rate Swaps Antitrust Litigation*,
 261 F. Supp. 3d 430 (S.D.N.Y. 2017)...................................................... 9, 11

*In re Jackson*,
 972 F.3d 25 (2d Cir. 2020)........................................................................ 22

*In re Literary Works in Electronic Databases Copyright Litigation*,
 654 F.3d 242 (2d Cir. 2011).................................................................. 16, 17

*In re NCAA Grant-in-Aid Cap Antitrust Litigation* (*Alston*),
 958 F.3d 1239 (9th Cir. 2020) ................................................................. 2, 6

*In re NCAA Litig. Grant-In-Aid Cap Antitrust Litigation* (*Alston*),
 375 F. Supp. 3d 1058 (N.D. Cal. 2019) .................................................. 8, 16

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, No. C 09-1967 CW,
 2013 WL 5979327 (N.D. Cal. Nov. 8, 2013) ............................................. 13

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.*,
 990 F. Supp. 2d 996 (N.D. Cal. 2013) ....................................................... 21

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.*,
 37 F. Supp. 3d 1126 (N.D. Cal. 2014) ....................................................... 21

*In re Nine W. LBO Sec. Litig.*,
 505 F. Supp. 3d 292 (S.D.N.Y. 2020)......................................................... 3

**Cases (cont.)**

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05MD1720MKBJO,
    2019 WL 6875472 (E.D.N.Y. Dec. 16, 2019) ................................................................ 17

*Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*,
    677 F.2d 1045 (5th Cir. 1982) ..................................................................................... 12

Kiser v. Reitz,
    765 F.3d 601 (6th Cir. 2014) ...................................................................................... 19

*Kramer v. Pollock-Krasner Found.*,
    890 F. Supp. 250 (S.D.N.Y. 1995) .............................................................................. 23

*Kramer v. Time Warner Inc.*,
    937 F.2d 767 (2d Cir. 1991) .......................................................................................... 2

*Lacy v. Principi*,
    317 F. Supp. 2d 444 (S.D.N.Y. 2004) ......................................................................... 14

*Laumann v. Nat'l Hockey League*,
    907 F. Supp. 2d 465 (S.D.N.Y. 2012) ......................................................................... 20

*Laws v. Sony Music Ent., Inc.*,
    448 F.3d 1134 (9th Cir. 2006) ..................................................................................... 22

*Lucky Brand Dungarees Inc. v. Ally Apparel Res. LLC*, No. 05CIV.6757,
    2006 WL 3771005 (S.D.N.Y. Dec. 20, 2006) ............................................................... 3

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ................................................................................................... 18

*Madison Square Garden, L.P. v. National Hockey League*, No. 07 CV 8455,
    2008 WL 4547518 (S.D.N.Y. Oct. 10, 2008) ....................................................... 12, 13

*Maloney v. T3 Media, Inc.*,
    853 F.3d 1004 (9th Cir. 2017) ............................................................................. 22, 23

*Man v. Warner Bros. Inc.*,
    317 F. Supp. 50 (S.D.N.Y. 1970) ............................................................................... 21

Marshall v. ESPN Inc.,
    111 F. Supp. 3d 815 (M.D. Tenn. 2015) ....................................................... 17, 21, 24

*Marshall v. ESPN*,
    668 F. App'x 155 (6th Cir. 2016) ......................................................... 2, 17, 18, 19

*McKenzie-Morris v. V.P. Records Retail Outlet*, No. 1:22-cv-1138-GHW,
    2023 WL 5211054 (S.D.N.Y. Aug. 13, 2023) ............................................................. 10

*Melendez v. Sirius XM Radio, Inc.*,
    50 F.4th 294 (2d Cir. 2022) ................................................................................. 18, 22

*Menominee Indian Tribe of Wisconsin v. United States*,
    577 U.S. 250 (2016) ................................................................................................... 11

*Monbo v. Nathan*,
    623 F. Supp. 3d 56 (E.D.N.Y. 2022) .......................................................................... 24

**Cases (cont.)**

*Nat'l Basketball Ass'n v. Motorola, Inc.*,
   105 F.3d 841 (2d Cir. 1997)...........................................................................22

*Nat'l Football League v. Alley*,
   624 F. Supp. 6 (S.D. Fla. 1983) ...................................................................21

*O'Bannon v. Nat'l Collegiate Athletic Ass'n*,
   580 U.S. 815 (2016)......................................................................................5

*O'Bannon v. NCAA*,
   7 F. Supp. 3d 955 (N.D. Cal. 2014) ...............................................1, 4, 5, 13

*O'Bannon v. NCAA*,
   802 F.3d 1049 (9th Cir. 2015) ..........................................................3, 5, 7, 14

*Parklane Hosiery Co. v. Shore*,
   439 U.S. 322 (1979).....................................................................................15

*Parks v. LaFace Records*,
   329 F.3d 437 (6th Cir. 2003) ........................................................................21

*Pittsburgh Athletic Co. v. KQV Broad. Co.*,
   24 F. Supp. 490 (W.D. Pa. 1938)..................................................................20

*Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*,
   507 F.3d 117 (2d Cir. 2007)..........................................................................19

*Post Newsweek Stations-Conn., Inc. v. Travelers Ins. Co.*,
   510 F. Supp. 81 (D. Conn. 1981) .................................................................20

*Ray v. ESPN, Inc.*,
   783 F.3d 1140 (8th Cir. 2015) ................................................................22, 23

*Robertson v. Nat'l Basketball Association*,
   622 F.2d 34 (2d Cir. 1980).............................................................................16

*Rooney v. Columbia Pictures Industries, Inc.*,
   538 F. Supp. 211 (S.D.N.Y. 1982) ................................................................19

*Ruffin-Steinback v. dePasse*,
   267 F.3d 457 (6th Cir. 2001) .........................................................................24

*Ruzhinskaya v. Healthport Techs., LLC*,
   311 F.R.D. 87 (S.D.N.Y. 2015) .....................................................................23

*S.W. Broad. Co. v. Oil Center Broad. Co.*,
   210 S.W.2d 230 (Tex. Civ. App. 1947)..........................................................20

*SL-x IP S.a.r.l. v. Merrill Lynch*, No. 21-2697,
   2023 WL 2620041 (2d Cir. Mar. 24, 2023)....................................................9

*Smith v. Bayer Corp.*,
   564 U.S. 299 (2011).......................................................................................14

*Smith v. McGinnis*,
   208 F.3d 13 (2d Cir. 2000).............................................................................10

**Cases (cont.)**

*Sports Props., Inc. v. Indep. Sch. Dist. No. 11*,
   957 P.2d 137 (Okla. Civ. App. 1998) .................................................. 20

*Square D Co. v. Niagara Frontier Tariff Bur., Inc.*,
   476 U.S. 409 (1986) ............................................................... 17, 19

*Taylor v. Sturgell*,
   553 U.S. 880 (2008) ................................................................. 14

*Twentieth Century Sporting Club v. Transradio Press Serv.*,
   165 Misc. 71 (N.Y. Sup. Ct. 1937) .................................................. 20

*US Airways, Inc. v. Sabre Holdings Corp.*,
   938 F.3d 43 (2d Cir. 2019) ........................................................ 11, 12

Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,
   396 F.3d 96 (2d Cir. 2005) ........................................................... 16

*Wis. Interscholastic Athletic Ass'n v. Gannett Co.*,
   658 F.3d 614 (7th Cir. 2011) ......................................................... 20

*World Wrestling Ent., Inc. v. Jakks Pac., Inc.*,
   328 F. App'x 695 (2d Cir. 2009) ...................................................... 11

*Yong Ki Hong v. KBS Am., Inc.*,
   951 F. Supp. 2d 402 (E.D.N.Y. 2013) ................................................. 23

## Statutes

15 U.S.C. § 15 ..................................................................... 1, 9, 19

17 U.S.C. § 106 ....................................................................... 22

765 Ill. Comp. Stat. 1075/35(b)(2) .................................................... 21

Cal. Civ. Code § 3344(d) .............................................................. 21

Ohio Rev. Code § 2741.02(D)(1) ........................................................ 21

## Rules

Federal Rule of Civil Procedure 23(b)(2) ............................................... 6

## INTRODUCTION

The issue of whether student-athletes should be compensated for their names, images, and likenesses (NIL) has generated widespread public commentary and significant litigation. In the last fifteen years alone, over ten lawsuits have been filed demanding increased student-athlete compensation, two of which were litigated to final judgment and all the way to the Supreme Court. Few legal issues have been better ventilated and more exhaustively litigated.

Against that backdrop, sixteen student-athletes who competed many years ago have now filed this lawsuit on behalf of a sweeping proposed class going back more than forty years, seeking to litigate student-athlete NIL compensation as if it is a novel and groundbreaking issue. But their claims fail as a matter of law for the following independent reasons.

*First*, all of Plaintiffs' claims are time-barred. The Clayton Act sets forth a four-year statute of limitations for antitrust claims. 15 U.S.C. § 15b. The face of the Complaint makes clear that Plaintiffs waited too long to bring this action: Their proposed class definition ends in 2016—*eight years ago*—and their claims are based on the alleged signing of contracts releasing certain alleged NIL rights to the NCAA that occurred between *8 and 40 years ago*. *See* Compl. ¶¶ 69, 110. Plaintiffs address this glaring deficiency only through conclusory allegations that are insufficient as a matter of law.

*Second*, virtually all of Plaintiffs' claims are barred by res judicata and/or their prior releases of the very claims they now seek to relitigate. All sixteen of the Plaintiffs in this case are members of the certified injunctive class in *O'Bannon v. NCAA*, 7 F. Supp. 3d 955 (N.D. Cal. 2014). The *O'Bannon* class litigated to final judgment a challenge to NCAA restraints on compensation for the use of student-athletes' NIL "in *game footage* or in videogames licensed or sold by Defendants," both during and after their eligibility to play college sports. *Id.* at 965 (emphasis added). Res judicata precludes Plaintiffs from relitigating the same injunctive relief

1

claim a decade later. In addition, ten named Plaintiffs were part of a class damages settlement under which they released "any and all past, present and future claims"[1] related to "the NCAA's entire compensation framework." *In re NCAA Grant-in-Aid Cap Antitrust Litigation* (*Alston*), 958 F.3d 1239, 1247 (9th Cir. 2020). That broad release precludes them from again raising their damages claims here.

*Third*, Plaintiffs fail to plausibly plead injury. In a directly-on-point case drawing on decades of precedent, the Sixth Circuit held that student-athletes cannot establish injury in fact or antitrust injury based on the alleged use of their NIL in "broadcasts of sporting events." *Marshall v. ESPN*, 668 F. App'x 155, 157 (6th Cir. 2016) (unpublished). That is because participants in live sporting events have no cognizable rights of publicity in such broadcasts (or redistributions of broadcasts). Moreover, the Second Circuit has confirmed repeatedly that any claims Plaintiffs could state implicating such hypothetical rights would be preempted by the Copyright Act.

*Finally*, Plaintiffs' unjust enrichment claim must be dismissed. Although Plaintiffs do not specify any source of law providing a basis for that claim, they cannot resuscitate their failed antitrust claims by recharacterizing them as equitable claims.

The Complaint should accordingly be dismissed in its entirety with prejudice.

## BACKGROUND

The claims in this case do not arrive on a blank slate. Below, we summarize the most relevant details of the long history of litigation over NCAA rules and NIL.[2]

---

[1] Order & Final J., *In re NCAA Grant-in-Aid Cap Antitrust Litigation* (*Alston*), No. 14-md-2541-CW, ECF No. 746 at 11–12 (N.D. Cal. Dec. 6, 2017) (*Alston* Settlement).

[2] When considering a Rule 12(b)(6) motion to dismiss a court may "consider the complaint in its entirety" as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (quotation marks omitted). "[C]ourts routinely take judicial notice of documents filed in other courts . . . to establish the fact of such litigation and related filings." *Kramer v. Time Warner Inc.*, 937 F.2d 767,

A.    Prior suits

1.    *O'Bannon & Keller*

On May 5, 2009, Sam Keller, a former college football player, filed suit in the Northern District of California against the NCAA, Electronic Arts, Inc. (EA), and the Collegiate Licensing Company (CLC). Keller claimed that the defendants had violated his state-law NIL rights by using his NIL in a popular college football video game. Shortly thereafter, on July 21, 2009, Ed O'Bannon, a former college basketball player, sued the NCAA and CLC in the same court. "The gravamen of O'Bannon's complaint was that the NCAA's amateurism rules, insofar as they prevented student-athletes from being compensated for the use of their NILs, were an illegal restraint of trade under Section 1 of the Sherman Act." *O'Bannon v. NCAA*, 802 F.3d 1049, 1055 (9th Cir. 2015). O'Bannon also specifically challenged NCAA rules allegedly requiring student-athletes to sign forms "relinquish[ing] all rights in perpetuity for use of their images, likenesses and/or names." 3d Consolidated Am. Class Action Compl., *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 4:09-cv-1967-CW (N.D. Cal. July 19, 2013), ECF No. 832 ¶ 610 (*O'Bannon* Complaint); *see also id.* ¶¶ 373, 599, 613. The *O'Bannon* plaintiffs' sweeping claims addressed the use of student-athlete NIL not only in live broadcasts but also archival footage used for promotional purposes. *See, e.g., id.* ¶¶ 444–76 (covering DVDs, on-demand video rentals, a "vault" of archival video, "video-clip sales to corporate advertisers and others," "premium content

_____

774 (2d Cir. 1991). As particularly relevant here, a court may "take judicial notice of public documents on a motion to dismiss to determine whether claims are barred by prior litigation." *Lucky Brand Dungarees Inc. v. Ally Apparel Res. LLC*, No. 05CIV.6757, 2006 WL 3771005, at *1 (S.D.N.Y. Dec. 20, 2006) (quotation marks omitted). Specifically, "[s]ettlement agreements are documents of which a court may take judicial notice in order to determine whether future claims are barred by a previous settlement." *In re Nine W. LBO Sec. Litig.*, 505 F. Supp. 3d 292, 302 n.3 (S.D.N.Y. 2020) (quoting *Deylii v. Novartis Pharms. Corp.*, No. 13-CV-06669, 2014 WL 2757470, at *4 (S.D.N.Y. June 16, 2014)).

on websites," and photos). The district court consolidated the cases, which proceeded before The Honorable Claudia Wilken.

On November 8, 2013, Judge Wilken denied certification of a damages relief class, but certified an injunctive relief class in *O'Bannon* defined as:

> All current and former student-athletes residing in the United States who compete on, or competed on, an NCAA Division I (formerly known as 'University Division' before 1973) college or university men's basketball team or on an NCAA Football Bowl Subdivision (formerly known as Division I-A until 2006) men's football team and whose images, likenesses and/or names may be, or have been, included or could have been included (by virtue of their appearance in a team roster) in ***game footage*** or in videogames licensed or sold by Defendants, their co-conspirators, or their licensees.

*O'Bannon v. NCAA*, 7 F. Supp. 3d 955, 965 (N.D. Cal. 2014) (emphasis added) *aff'd in part, vacated in part*, 802 F.3d 1049 (9th Cir. 2015). As noted above, the reference to "game footage" covered both live and archival footage—as confirmed by the inclusion of *former* student-athletes in the definition of the *injunctive* class. The *O'Bannon* and *Keller* plaintiffs settled their claims against EA and CLC. After the district court's class certification decision, the *O'Bannon* plaintiffs voluntarily dismissed their damages claims against the NCAA with prejudice. *O'Bannon* was subsequently deconsolidated from *Keller*. The *Keller* plaintiffs then settled their claims with the NCAA.[3]

---

[3] As relevant here, the settlement between Keller and the NCAA involved a release of:

> [A]ny and all past, present, and future claims . . . arising out of, involving, or relating to the alleged use of any name, image, photograph, or likeness in EA's production, manufacture, sale, distribution, or publication of NCAA-Branded Videogames, or the alleged use of or failure to compensate for the alleged use of any NCAA student-athlete's name, image, photograph, or likeness in connection with EA'S NCAA-Branded Videogames by the NCAA, EA, CLC, or any Person, that have been, could have been, or should have been asserted in the Lawsuits, including but not limited to any claims based in any way on alleged rights of publicity or name, image, and likeness rights under the law of any state or the United States, whether recognized now or hereafter, including any rights recognized in court decisions or statutes.

The remaining injunctive claims against the NCAA in *O'Bannon* proceeded to a bench trial before Judge Wilken in June of 2014. The district court found that the challenged NCAA NIL compensation rules violated Section 1 of the Sherman Act in a narrow way. Judge Wilken accordingly prohibited the NCAA from capping scholarships to student-athletes "generated from the use of their names, images, and likenesses" at a number below the federal "cost of attendance" amount for each school. *Id.* at 1007–08. Second, Judge Wilken "prohibit[ed] the NCAA from enforcing any rules to prevent its member schools and conferences from offering to deposit a limited share of licensing revenue in trust for their FBS football and Division I basketball recruits, payable when they leave school or their eligibility expires." *Id.* at 1008. While the injunction "permit[ted] the NCAA to set a cap on the amount of money that may be held in trust," it "prohibit[ed] the NCAA from setting a cap of less than five thousand dollars (in 2014 dollars) for every year that the student-athlete remains academically eligible to compete." *Id.*

On September 30, 2015, the Ninth Circuit affirmed in part and reversed in part. The Ninth Circuit agreed with the district court's finding of an antitrust violation related to NIL. *O'Bannon*, 802 F.3d at 1053. And it affirmed the district court's injunction prohibiting the NCAA from capping scholarships to student-athletes below the cost of attendance. *Id.* at 1075. But it concluded that the district court clearly erred by enjoining the NCAA to permit students "to receive NIL cash payments untethered to their education expenses." *Id.* at 1076. The Supreme Court denied certiorari. *O'Bannon v. Nat'l Collegiate Athletic Ass'n,* 580 U.S. 815 (2016) (Mem.).

     2.    <u>*Alston*</u>

In March of 2014, while *O'Bannon* proceeded, a number of other student-athletes filed several different antitrust actions against the NCAA and many of the Division I ("DI")

---

Am. Class Action Settlement Agreement & Release, *Keller v. NCAA*, 4:09-cv-1967-CW, ECF No. 1158-2 at ¶ 33 (*Keller* Settlement). Plaintiff Chalmers was part of the *Keller* Settlement Class.

conferences. On June 13, 2014, the Judicial Panel on Multidistrict Litigation consolidated those

actions into an MDL under the caption *NCAA Grant-In-Aid Cap Antitrust Litigation* (*Alston*).

"Rather than confining their challenge to rules prohibiting NIL compensation," the *Alston*

plaintiffs "sought to dismantle the NCAA's entire compensation framework." *Alston*, 958 F.3d at

1247. That is, the plaintiffs challenged all NCAA limits on compensation and benefits in excess

of the cost of attendance, not just those related to NIL. On December 4, 2015, the district court

certified three different injunctive relief classes under Federal Rule of Civil Procedure 23(b)(2).

*See* Order, *In re Nat'l Collegiate Athletic Ass'n Grant-In-Aid Cap Antitrust Litig.*, No. 4:14-md-

02541-CW, ECF No. 305 (N.D. Cal. Dec. 4, 2015).

On February 3, 2017, the *Alston* parties submitted a proposed settlement agreement

resolving only the damages claims on behalf of three settlement classes. The district court

approved the settlement and issued a final judgment as to damages on December 6, 2017. As

particularly relevant here, one of those classes was the Division I Men's Basketball Class:

> All current and former NCAA Division I men's basketball student-athletes who, at
> any time from March 5, 2010[4] through the date of Preliminary Approval of this
> Settlement [which occurred on March 21, 2017], received from an NCAA member
> institution for at least one academic term (such as a semester or quarter) a Full
> Athletics Grant-In-Aid.

*Alston* Settlement at 2.

The defendants agreed to pay roughly $208 million, with each class member receiving a

payment based on the number of years played (approximately $6,000 for four years). *Id.* at 1.

While the *Alston* plaintiffs' claims were not specifically limited to NIL, the measure of relief the

class received—the difference between the grant-in-aid scholarships they received and full cost-

of-attendance scholarships—was exactly what was required to be permitted as NIL-related

---

[4] This date was four years prior to the filing of the initial complaint in *Alston*, to track the applicable
statute of limitations for the *Alston* plaintiffs' antitrust claims.

compensation pursuant to the injunctive relief judgment in *O'Bannon* (which challenged only NIL restrictions). *Id.*; *see O'Bannon*, 802 F.3d at 1075.

In exchange, the plaintiffs agreed, on behalf of the classes, to a broad release of claims:

> As of the Settlement Agreement's Effective Date, the Releasors will release the Releasees from *any and all past, present and future claims, demands, rights, actions, suits, or causes of action, for monetary damages of any kind* (including but not limited to actual damages, statutory damages, and exemplary or punitive damages), whether class, individual or otherwise in nature, known or unknown, foreseen or unforeseen, suspected or unsuspected, asserted or unasserted, contingent or non-contingent, under the laws of any jurisdiction, which Releasors or any of them, whether directly, representatively, derivatively, or in any other capacity, ever had, now have or hereafter can, shall or may have, *arising out of or relating in any way to any of the legal, factual, or other allegations made in Plaintiffs' Actions, or any legal theories that could have been raised on the allegations in Plaintiffs' Actions*.

*Alston* Settlement at 11–12 (emphasis added; footnotes omitted).

The "Releasees" entitled to the benefit of the settlement included "the NCAA, each of the Conference Defendants, and each of their respective member institutions (past and present)" as well as many more related parties and entities. *Id.* at 11 n.49. The Releasees were "discharged and released from all Released Claims" and the members of the settlement were "permanently barred and enjoined from instituting or prosecuting any of the Released Claims." *Id.* at 12. The settlement agreement and the judgment were "binding on and have *res judicata* and preclusive effect in all pending and future lawsuits or other proceedings encompassed by the Released Claims maintained by or on behalf of the [settlement classes]." *Id.*

The released claims in the *Alston* damages settlement did not include "claims solely for prospective injunctive relief." *Id.* at 12. Judge Wilken held a ten-day bench trial of those claims. She then found that "preventing unlimited cash payments" was a permissible procompetitive effect of the challenged rules but concluded that goal could be achieved through less restrictive means, specifically "an alternative compensation scheme that would allow limits on the grant-in-aid scholarships at not less than the cost of attendance and limits on compensation and benefits

unrelated to education, but that would generally prohibit the NCAA from limiting education-related benefits." *In re NCAA Litig. Grant-In-Aid Cap Antitrust Litigation* (*Alston*), 375 F. Supp. 3d 1058, 1062 (N.D. Cal. 2019). The Ninth Circuit affirmed. *Alston*, 958 F.3d at 1244. The Supreme Court, in turn, affirmed the Ninth Circuit, in a highly publicized opinion. *NCAA v. Alston*, 594 U.S. 69, 106–07 (2021).

B.    Ongoing Litigation

Several other antitrust suits against the NCAA and some of the conferences named in this case have been pending for quite some time. Most notably, in 2020, the attorneys from *Alston* filed a highly-publicized lawsuit seeking to eliminate all NCAA rules limiting NIL compensation. *See In re College Athlete NIL Litig.*, No. 4:20-cv-03919-CW (N.D. Cal.). Since then, many other cases have been filed addressing student-athlete compensation more generally. *See Hubbard v. NCAA*, No. 4:23-cv-01593 (N.D. Cal.); *Fontenot v. NCAA*, No. 1:23-cv-03076-CNS-STV (D. Colo.); *Carter v. NCAA*, No. 3:23-cv-06325-RS (N.D. Cal.). Other suits similar to this one, on behalf of narrower groups of student-athletes, have been filed in the Eastern District of Michigan, the Southern District of Ohio, the North Carolina Superior Court, and the Los Angeles Superior Court.

C.    This Case

Plaintiffs here are sixteen former student-athletes who played DI men's basketball between 1994 and 2015. *See* Compl. ¶¶ 18–33. Plaintiffs have sued the NCAA and six conferences: the Big East Conference, the Pac-12 Conference, the Big Ten Conference, the Big 12 Conference, the Southeastern Conference, and the Atlantic Coast Conference ("Conferences"). *Id.* ¶¶ 34–41. Plaintiffs allege that the defendants "have systematically and intentionally misappropriated Plaintiffs and similarly situated class members' publicity rights—including their names, images, and likenesses—associated with their athletics competition and championship play, reaping scores of millions of dollars from Plaintiffs and similarly situated class members' participation in

competition." *Id.* ¶ 6. Plaintiffs allege that they were required to sign away their NIL rights in order to compete as student-athletes. Compl. ¶¶ 66–69, 110. As in *O'Bannon* and *Marshall*, Plaintiffs challenge the use of "archival footage" of games, as well as "offering footage and images for sale or license." *Id.* ¶ 51.

Plaintiffs seek to represent a proposed class of "[a]ll persons who were NCAA student-athletes prior to June 15, 2016, whose image or likeness has been used in any video posted by or licensed by the NCAA, the Conferences, TSI or their agents, distributors, contractors, licensees, subsidiaries, affiliates, partners or anyone acting in concert with any of the foregoing entities or persons." Compl. ¶ 113. They assert claims under Section 1 of the Sherman Act and an unjust enrichment claim (without identifying any source of law). *Id.* ¶¶ 138–89. They seek injunctive and declaratory relief, actual and punitive damages, and disgorgement of profits. *Id.* ¶¶ 153–57, 178–82, 189.

## ARGUMENT

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For several reasons, Plaintiffs cannot clear that bar.

## I.    PLAINTIFFS' CLAIMS ARE TIME-BARRED BECAUSE THEY CHALLENGE CONDUCT THAT OCCURRED AT LEAST EIGHT YEARS AGO.

Plaintiffs' Sherman Act claims are based on alleged conduct that occurred between 8 and 40 years ago and thus are barred by the applicable four-year statute of limitations. 15 U.S.C. § 15b; *see also In re Interest Rate Swaps Antitrust Litigation*, 261 F. Supp. 3d 430, 487 (S.D.N.Y. 2017).

"A cause of action under the antitrust laws accrues when a defendant commits an act that injures" the plaintiff. *SL-x IP S.a.r.l. v. Merrill Lynch*, No. 21-2697, 2023 WL 2620041, at *2 (2d

Cir. Mar. 24, 2023) (internal citation and quotation marks omitted). The act alleged here is Defendants' requiring Plaintiffs to "sign[] a contract" (the Student-Athlete Statement) granting the NCAA their purported NIL rights. Compl. ¶¶ 69, 110. Plaintiffs admit they signed these forms between *8 and 40 years* ago—well outside the applicable four-year limitations period. Dismissal is thus required. *See Haier Am. Trading, LLC v. Samsung Elecs.*, *Co.*, No. 1:17-cv-921, 2018 WL 4288617, at *6 (N.D.N.Y. Sept. 7, 2018); *In re Ciprofloxacin Hydrochloride*, 261 F. Supp. 2d 188, 230 (E.D.N.Y. 2003).

Because their claims are facially time-barred, Plaintiffs attempt to seek refuge in exceptions to the limitations period, but their cursory and conclusory invocations of exceptions change nothing. "[S]tatutes of limitations protect important social interests in certainty, accuracy, and repose," so exceptions are "a drastic remedy applicable only in rare and exceptional circumstances." *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 144 (2d Cir. 2011) (quotations omitted); *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000); *see also Ciprofloxacin*, 261 F. Supp. 2d at 228. Plaintiffs fail to plausibly plead such "rare and exceptional circumstances," offering only a "formulaic recitation" of the exceptions. *Bell Atlantic*, 550 U.S. at 555.

First, Plaintiffs do not plausibly plead equitable estoppel. *See* Compl. ¶ 132. "To invoke equitable estoppel, a plaintiff must show that: (1) the defendant made a definite misrepresentation of fact, and had reason to believe that the plaintiff would rely on it; and (2) the plaintiff reasonably relied on that misrepresentation to his detriment." *Buttry v. General Signal Corp.*, 68 F.3d 1488, 1493 (2d Cir. 1995). Plaintiffs plead neither. *See McKenzie-Morris v. V.P. Records Retail Outlet*, No. 1:22-cv-1138-GHW, 2023 WL 5211054, at *8 (S.D.N.Y. Aug. 13, 2023) (rejecting estoppel theory because plaintiff failed to plead a misrepresentation by defendants to plaintiff). Nor do they offer any justification for waiting *8 to 40 years* to bring their claims—an unsolvable deficiency given the intense public focus on the issue of student-athlete NIL (which put Plaintiffs on notice

to sue earlier), as well as the fact that Plaintiffs *were members of classes that already litigated those issues*. *See infra* Section II; *see also Buttry*, 68 F.3d at 1494–95 (rejecting equitable estoppel argument due to plaintiff's "patently unreasonable" delay of eleven months).

Nor do Plaintiffs plausibly allege anything extraordinary about this case warranting equitable tolling. *See* Compl. ¶¶ 132–34. A plaintiff seeking equitable tolling must show that he "has been pursuing his rights diligently" but that "some extraordinary circumstance stood in his way and prevented timely filing." *Menominee Indian Tribe of Wisconsin v. United States*, 577 U.S. 250, 255 (2016) (internal citation and quotation marks omitted). The only supposed "extraordinary circumstance" that Plaintiffs identify is being "barely at the age of maturity" when they allegedly signed their Student-Athlete Statements. Compl. ¶ 133. But given that Plaintiffs are members of classes that already litigated these claims, *see infra* Section II, it is evident that their age was not a "sever[e] . . . obstacle impeding compliance with a limitations period." *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011). Plaintiffs also do not explain why their age "*caused* [them] to miss the original filing deadline." *Id.* Given the extensive publicity and litigation surrounding the issues in this case, "class plaintiffs had every basis, in real time, to smell a rat." *In re Interest Rate Swaps*, 261 F. Supp. 3d at 489 (rejecting equitable tolling argument); *see also World Wrestling Ent., Inc. v. Jakks Pac., Inc.*, 328 F. App'x 695, 698 (2d Cir. 2009) (holding claims were time-barred where, as here, the alleged anticompetitive conduct "was open and notorious, and a reasonable person . . . would have investigated and brought suit within the statute of limitations period").

Finally, Plaintiffs have no basis for invoking the continuing violations exception to the antitrust statute of limitations. Compl. ¶ 134. The continuing violations exception requires a plaintiff to identify an "overt act" by the defendant *within the limitations period. US Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43, 68 (2d Cir. 2019). That overt act must constitute a "separate antitrust violation[]," and it must inflict a new and accumulating antitrust injury, "i.e., a continuing

injury to competition, not merely a continuing pecuniary injury to a plaintiff." *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1055–56 (5th Cir. 1982) (internal citation and quotation marks omitted); *Ciprofloxacin*, 261 F. Supp. 2d at 228. Plaintiffs cannot satisfy those requirements here. Even if the alleged continued use of game footage involving Plaintiffs raised legal concerns (*but see infra* Section III), such use flows from the contracts Plaintiffs allegedly signed when they were participating in college sports. And performance of a contract—even an allegedly anticompetitive contract—is not an "overt act" that restarts the limitations period. *See, e.g.*, *U.S. Airways*, 938 F.3d at 69; *see also Ciprofloxacin*, 261 F. Supp. 2d at 229; *Haier*, 2018 WL 4288617, at *6–*7.

Courts in the Second Circuit have rejected application of the continuing violations doctrine and dismissed antitrust claims in factually analogous circumstances. Just last week, the District of Connecticut rejected application of the continuing violations theory in granting a motion to dismiss a case challenging an agreement among Ivy League schools not to award athletic scholarships. *See Choh v. Brown Univ.*, No, 3:23-cv-00305-AWT, 2024 WL 4465476 at *12–13 (D. Conn. Oct. 10, 2024). Applying *U.S. Airways*, the court concluded that the plaintiff's "claim accrued . . . and the statute of limitations began running" when "he enrolled at Brown University," and that the decision not "to award him an athletic scholarship or compensation for athletic services during the remainder of his time at Brown was simply a manifestation of . . . Brown's decision to enter into the most recent version of the Ivy League Agreement." *Id.* at *12.

Similarly, in *Madison Square Garden, L.P. v. National Hockey League*, No. 07 CV 8455, 2008 WL 4547518 (S.D.N.Y. Oct. 10, 2008), the court rejected an antitrust challenge to NHL rules requiring clubs to grant exclusive rights to the NHL, finding that the renewal of the licenses did not constitute "overt acts" restarting the limitations period. Just so here, where Plaintiffs challenge the continuing effects of contracts they allegedly signed well outside the limitations period. Indeed,

this case presents an even clearer case for dismissal than *Madison Square Garden* because plaintiffs there (unlike here) actually renewed the challenged contract during the limitations period. *Id.* at *10. Plaintiffs' antitrust claims are thus time-barred and should be dismissed in their entirety.

## II.    PLAINTIFFS' CLAIMS ARE BARRED BY THE *O'BANNON* JUDGMENT AND THE *ALSTON* SETTLEMENT RELEASE.

### A.    *O'Bannon* Forecloses Plaintiffs' Claims for Injunctive Relief.

The final judgment in *O'Bannon* resolved claims for injunctive relief on behalf of a certified class that covered, as relevant here, "all current and former student-athletes residing in the United States who compete on, or competed on, an NCAA [DI] men's basketball team . . . and whose images, likenesses and/or names may be, or have been, included or could have been included (by virtue of their appearance in a team roster) in **game footage** or in videogames licensed or sold by Defendants, their co-conspirators, or their licensees." *O'Bannon*, 7 F. Supp. 3d at 965 (emphasis added). That judgment—entered in a case challenging, among other things, the continued commercial use of game footage and photos after a student-athlete's eligibility—bars relitigating the same issues here as to all Plaintiffs.

Every plaintiff in this case was a member of the certified injunctive class in *O'Bannon*. Each competed on a men's DI basketball team. Compl. ¶¶ 18–33. Each alleges that the defendants appropriated their NIL by using game footage. *Id.* ¶¶ 171–72. And all played prior to, or were current players on November 8, 2013, when the district court certified the class. *See id.* ¶¶ 18–33; *In re NCAA Student-Athlete Name & Likeness Licensing Litig.,* No. C 09-1967 CW, 2013 WL 5979327, at *10 (N.D. Cal. Nov. 8, 2013) (*O'Bannon* Class Certification Order). Plaintiffs are accordingly bound by the district court's judgment in *O'Bannon*.

"[A] judgment in a properly entertained class action is binding on class members in any subsequent litigation." *Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 874 (1984). That judgment "precludes the parties or their privies from relitigating issues that were or could have

been raised in that action." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981). The Plaintiffs in *O'Bannon* challenged rules and practices precluding them from being compensated for the use of their NILs in "(1) live game telecasts, (2) sports video games, and (3) game rebroadcasts, advertisements, and other archival footage." *O'Bannon*, 802 F.3d at 1057. The Ninth Circuit conclusively resolved that challenge and delineated the forms of additional compensation the antitrust laws required the NCAA to permit. *Id.* at 1075–76.

That is the precise injunctive relief claim that Plaintiffs seek to relitigate here. Their Complaint essentially repeats allegations from the *O'Bannon* Complaint. Plaintiffs here complain that they receive no compensation for the use of archival footage and images from their playing days, Compl. ¶¶ 104–07, and seek to enjoin "the NCAA and any person acting through it from relying on any unenforceable assignment of publicity rights," *id.* ¶¶ 154, 179. Those are exactly the same "rules and practices," *id.* ¶ 141, that were challenged in *O'Bannon*. *See O'Bannon* Compl. ¶¶ 373, 599, 610, 613 (challenging assignment of rights); ¶¶ 444–76 (listing overlapping challenges to uses of those rights by the NCAA). Plaintiffs are therefore bound by the *O'Bannon* judgment and precluded from relitigating the *O'Bannon* injunction here. *Cooper*, 467 U.S. at 874; *see also Smith v. Bayer Corp.*, 564 U.S. 299, 315 (2011) ("[A] class action approved under Rule 23" binds all class members); *Taylor v. Sturgell*, 553 U.S. 880, 894 (2008) (same).[5]

---

[5] Although the *O'Bannon* plaintiffs did not name the Conferences as defendants, the *O'Bannon* judgment still bars Plaintiffs' claims against both the NCAA and the Conferences under the doctrines of res judicata and defensive nonmutual collateral estoppel. "When a party has litigated a claim to final judgment, that party cannot avoid the *res judicata* effect of that judgment by bringing suit against a new defendant that is in privity with the original defendant." *Lacy v. Principi*, 317 F. Supp. 2d 444, 447 (S.D.N.Y. 2004); *see also Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 367–68 (2d Cir. 1995). Plaintiffs allege the Conferences are each "conference members" of the NCAA and, like the *O'Bannon* plaintiffs, challenge rules that are implemented through the NCAA. Compl. ¶¶ 36–41, 62–66. The Conferences thus have a "sufficiently close relationship" with the NCAA to "justify [claim] preclusion." *See Central Hudson*, 56 F.3d at 368; *Expert Elec., Inc. v. Levine*, 554 F.2d 1227 (2d

B.      *Alston* Forecloses Ten Plaintiffs' Claims for Damages.

Separately, Plaintiffs Boatwright, Coleman, Collins, Council, Daniels, Giplaye, Greene, Oriakhi, Pressey, and Smith have already released the damages claims they seek to bring here, which requires dismissal of their damages claims.[6] Each was a member of the *Alston* damages settlement class because each played on a Division I men's basketball team during the *Alston* class period, Compl. ¶¶ 18–33, and received "from an NCAA member institution for at least one academic term . . . a Full Athletics Grant-In-Aid." *Alston* Settlement at 2. And none opted out of the *Alston* settlement class. These ten Plaintiffs have accordingly released all possible claims for money damages—against the NCAA, the Conferences, and their respective members—"arising out of or relating in any way to any of the legal, factual, or other allegations made in [*Alston*], or any legal theories that could have been raised on the allegations in [*Alston*]." *Id.* at 11–12.

Plaintiffs' damages claims here are fully within that release, which is "binding on and ha[s] *res judicata* and preclusive effect in all pending and future lawsuits or other proceedings encompassed by the Released Claims maintained by or on behalf of the Releasors." *Id.* at 12. Plaintiffs demand "a competitive share of the revenue being brought into the NCAA and their coconspirators from Plaintiffs' and Class members' labor." Compl. ¶¶ 152, 176. That falls within

---

Cir. 1977) (concluding privity existed between a representative association and one of its members for preclusion purposes). Further, so long as the plaintiff had "a full and fair opportunity to litigate" an issue in an earlier suit, *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 329 (1971), the doctrine of defensive nonmutual collateral estoppel "precludes a plaintiff from relitigating identical issues by merely 'switching adversaries.'" *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329 (1979) (internal citation omitted).

[6] As noted *supra*, *all* Plaintiffs' claims are separately barred by the statute of limitations. Notably, claims by Plaintiffs Bramlett, Chalmers, Cunningham, Edgerson, Stewart, and Terry (the six Plaintiffs who were not part of the *Alston* class) fell outside even the *Alston* limitations period because they stopped playing basketball by 2008. Compl. ¶¶ 18, 20, 27–29, 33. Plaintiff Chalmers was also part of the *Keller* Settlement, which involved a release of certain NIL-related claims and at least put him on notice of his ability to bring other related claims. *See supra* n.3; *see supra* Section I.

the *Alston* complaint, which challenged "the current, interconnected set of NCAA rules that limit the compensation [student-athletes] may receive in exchange for their athletic services." *Alston*, 375 F. Supp. 3d at 1062. The NIL damages claims Plaintiffs raise here are premised on a "legal theor[y] that could have been raised on the allegations in" *Alston*, *Alston* Settlement at 11–12, particularly given that *Alston* was filed while a lawsuit challenging NIL restrictions, including the alleged perpetual licensing of student-athlete NIL rights, was still pending, *id.*

If the release's plain text were not enough, "[t]he law is well established in this Circuit and others that class action releases may include claims not presented and even those which could not have been presented as long as the released conduct arises out of the 'identical factual predicate' as the settled conduct." *Wal-Mart Stores, Inc., v. Visa U.S.A., Inc.*, 396 F.3d 96, 107 (2d Cir. 2005) (internal citation omitted). The "identical factual predicate" requirement is satisfied because both Plaintiffs here and the *Alston* plaintiffs challenged NCAA rules limiting compensation generally, which necessarily include rules limiting compensation for NIL. The Second Circuit's decision in *Robertson v. Nat'l Basketball Association*, 622 F.2d 34, 35 (2d Cir. 1980), underscores the point. There, the court held that a professional basketball player's individual antitrust suit was barred by an earlier class settlement of claims challenging the same rules. Although the plaintiff argued that his suit was "unique[]" because he sought to compute compensation differently than the earlier plaintiffs, that did "not remove it from the orbit of the challenged rule. The dispute between the parties in both cases involved the concept of the rule, not the manner in which compensation was computed." *Id.*

Plaintiffs also cannot escape the settlement's preclusive effect by arguing that they challenge *ongoing* violations of their NIL rights by Defendants' continued use of archival footage. The Second Circuit rejected that argument in *In re Literary Works in Electronic Databases Copyright Litigation*, 654 F.3d 242 (2d Cir. 2011), which concerned a class settlement of copyright

infringement claims. There, the settlement objectors claimed that releasing *future* infringement claims was improper because "future infringements are distinct harms giving rise to independent claims of relief, with factual predicates that are different from authors' past infringement claims." *Id.* at 248. The Second Circuit disagreed: "[R]egardless of whether future infringements would be considered independent injuries," they fell within the releases because the plaintiffs' complaint had sought "injunctive relief for future uses, and therefore contemplate[d] these alleged future injuries." *Id.*; *see also In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05MD1720MKBJO, 2019 WL 6875472, at *25 (E.D.N.Y. Dec. 16, 2019) ("[I]t does not appear that there is any prohibition on the release of future claims, as long as those claims fall within the identical factual predicate test"). Accordingly, the damages claims of at least ten of the named Plaintiffs are barred by the release in *Alston*.

### III. THE COMPLAINT FAILS TO STATE A CLAIM BECAUSE PLAINTIFFS HAVE NOT PLAUSIBLY PLEADED INJURY.

Plaintiffs' antitrust claims fail for an additional, independent reason: Plaintiffs do not plausibly allege the essential requirements of injury-in-fact and antitrust injury. Plaintiffs' complaint is premised on the idea that the NCAA violated the law by posting "archival footage," "full games," "game footage," and "replays" of college games in which Plaintiffs played, and their Complaint includes numerous hyperlinks to those rebroadcasts on NCAA website pages and the NCAA's YouTube channel. Compl. ¶¶ 2, 49, 101, 102 & 105. But a long line of precedent makes clear that Plaintiffs have no right of publicity in such rebroadcasts. *See, e.g.*, *Marshall*, 668 F. App'x at 157 (characterizing the claimed right of publicity in a broadcast as a "legal fantasy") (*affirming* 111 F. Supp. 3d 815 (M.D. Tenn. 2015)). In a squarely-on-point decision, the district court in *Marshall* granted a motion to dismiss a similar antitrust case after concluding that participants in a broadcast "cannot have been injured by a purported conspiracy to deny them the ability to sell non-existing rights." *Marshall*, 111 F. Supp. 3d at 835 (citing *Square D Co. v.*

*Niagara Frontier Tariff Bur., Inc.*, 476 U.S. 409, 416 (1986)). The Sixth Circuit then affirmed, concluding it had "little to add" to the district court's "notably sound and thorough opinion;" that "[t]o state the plaintiffs' theory in this case is nearly to refute it;" and describing their antitrust claims as "meritless." *Marshall*, 668 F. App'x at 156–57; *see also Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977); *CBC Cos. v. Equifax, Inc.*, 561 F.3d 569, 572 (6th Cir. 2009). The same logic applies here.

In addition, even if some arguably applicable and unpled state right-of-publicity law required individualized consents from players to broadcast or rebroadcast a sports event, that state law would be preempted here by the Copyright Act because there is no plausible claim that Plaintiffs' NIL is being used to endorse a distinct product. *See, e.g.*, *Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 306 (2d Cir. 2022) (noting the Copyright Act preempts plaintiffs' publicity claims absent a factual allegation that defendant "used the plaintiff's identity or likeness to support a product that was independent from the copyrighted work itself").

A.    <u>Plaintiffs Must Plausibly Plead Injury-In-Fact and Antitrust Injury.</u>

An antitrust plaintiff must plead and prove both constitutional standing ("injury in fact") and antitrust standing. An "injury in fact" is "an invasion of a legally protected interest which is (a) concrete and particularized; and (b) imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks omitted). "Harm to the antitrust plaintiff is sufficient to satisfy" that requirement, but the Court must then "make a further determination whether the plaintiff is a proper party to bring a private antitrust action." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 535 n.31 (1983) (citations omitted). To prove this separate requirement of "antitrust injury," *Brunswick*, 429 U.S. at 489, a plaintiff must show "injury in fact to the plaintiff's business or property caused by the antitrust violation" and that the injury is "attributable to the anticompetitive aspect of the practice

under scrutiny." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121–22 (2d Cir. 2007) (citing 15 U.S.C. § 15). Plaintiffs must adequately allege facts sufficient to support constitutional and antitrust standing. *See Gelboim v. Bank of Am. Corp.*, 823 F.3d 729, 770 (2d Cir. 2016); *In re Aluminum Warehousing Antitrust Litig.*, 520 F. Supp. 3d 455, 474 (S.D.N.Y. 2021) (Engelmayer, J.).

The sole injury Plaintiffs claim is that they have not been compensated for the use of their NIL in rebroadcasts of televised basketball games—what they term a violation of their "publicity rights." Compl. ¶¶ 144–45, 155 (alleging that NCAA's illegal conduct deprived Plaintiffs of profits they would have earned from "publicity rights"); *see id.* ¶¶ 161, 172 (alleging that Plaintiffs were denied royalties for use of their NIL). But as explained further below, Plaintiffs have no right of publicity in such rebroadcasts, so they "cannot have been injured by a purported conspiracy to deny them the ability to sell non-existent rights." *Marshall*, 111 F. Supp. 3d at 835; *see also Marshall*, 668 F. App'x at 157.

Stated differently, Plaintiffs cannot show that "legally protected interest[s] ha[ve] been invaded" because their claimed rights of publicity are not legally protected. *Kiser v. Reitz*, 765 F.3d 601, 607 (6th Cir. 2014). Plaintiffs thus lack both injury-in-fact and antitrust injury. *Id.*; *see also Brunswick*, 429 U.S. at 488; *CBC Cos.*, 561 F.3d at 572. *Rooney v. Columbia Pictures Industries* illustrates the point. Rejecting an antitrust claim based on purported publicity rights in old films, this Court explained:

> As to the first cause of action alleging a conspiracy since at least 1977 to refuse to deal with Rooney concerning his "publicity rights" in pre-1960 films, it is manifest that, as Rooney had no such rights in the pre-1960 films, he cannot have suffered any antitrust injury as the result of any such conspiracy.

538 F. Supp. 211, 230 (S.D.N.Y. 1982), *aff'd*, 714 F.2d 117 (2d Cir. 1982). Here too, Plaintiffs cannot have suffered injury-in-fact or injury to their "business or property" by the alleged denial of the opportunity to license something they do not own. *Square D Co.*, 476 U.S. at 416 (antitrust

"[i]njury implies violation of a legal right"). Further, any claim arising under a hypothetical right of publicity would be preempted under the Copyright Act. Plaintiffs' antitrust claims should therefore be dismissed.[7]

B.  Plaintiffs Have No Legally Protected Right of Publicity in Distributions of Sports Events.

State statutes and judicial decisions uniformly recognize that the right to license a sporting event lies exclusively with the promoter or producer of the event. *See, e.g.*, *Wis. Interscholastic Athletic Ass'n v. Gannett Co.*, 658 F.3d 614, 624–28 (7th Cir. 2011); *Laumann v. Nat'l Hockey League*, 907 F. Supp. 2d 465, 485 (S.D.N.Y. 2012). By virtue of its physical control of the venue, the promoter may place conditions upon entry and may grant permission to broadcast the game only to one, or to a limited number, of broadcasters. *See, e.g.*, *Pittsburgh Athletic Co. v. KQV Broad. Co.*, 24 F. Supp. 490, 492–93 (W.D. Pa. 1938); *Twentieth Century Sporting Club v. Transradio Press Serv.*, 165 Misc. 71 (N.Y. Sup. Ct. 1937). Thus, it is long settled that an event's promoter exclusively owns broadcast rights for that event. *See, e.g.*, *S.W. Broad. Co. v. Oil Center Broad. Co.*, 210 S.W.2d 230, 232 (Tex. Civ. App. 1947); *Okla. Sports Props., Inc. v. Indep. Sch. Dist. No. 11*, 957 P.2d 137, 139 (Okla. Civ. App. 1998); *Dora v. Frontline Video, Inc.*, 15 Cal. App. 4th 536, 542 (1993); *Post Newsweek Stations-Conn., Inc. v. Travelers Ins. Co.*, 510 F. Supp. 81, 85-86 (D. Conn. 1981).

The necessary corollary to this principle is that participants have no right of publicity in a broadcast or rebroadcast of a sporting event. A right of publicity does not arise when a person

---

[7] To the extent Plaintiffs claim their antitrust injury was allegedly having to sign a form allowing the NCAA to use their NIL for promoting NCAA events, *see* Compl. ¶¶ 15, 177–78, that claim fails for the same reasons. Plaintiffs have not alleged any use of their NIL to advertise independent goods or services, and use of Plaintiffs' NIL to advertise broadcasts themselves is not a violation of their right of publicity. *See infra* Section III.C. In any event, any claim premised on that alleged injury is barred by the statute of limitations. *See supra* Section I.

simply appears in public or in a video taken in a public setting. *See Parks v. LaFace Records*, 329 F.3d 437, 459 (6th Cir. 2003); *Marshall*, 111 F. Supp. 3d at 825–29. Accordingly, courts have overwhelmingly agreed that simply broadcasting or rebroadcasting all or portions of a sports event does not implicate players' rights of publicity. *See, e.g., Marshall*, 111 F. Supp. 3d at 825–27, *aff'd* 668 F. App'x at 157; *Dryer v. Nat'l Football League*, 55 F. Supp. 3d 1181, 1195–1200 (D. Minn. 2014), *aff'd* 814 F.3d 938 (8th Cir. 2016); *Nat'l Football League v. Alley*, 624 F. Supp. 6, 10 (S.D. Fla. 1983); *Gionfriddo v. Major League Baseball*, 94 Cal. App. 4th 400, 406–18 (2001). In fact, while Plaintiffs do not specify what, if any, states' laws they seek to invoke, many state statutes explicitly disclaim any right of publicity or related consent requirements for participants in sports broadcasts. *See, e.g.*, Cal. Civ. Code § 3344(d); 765 Ill. Comp. Stat. 1075/35(b)(2); Ohio Rev. Code § 2741.02(D)(1); *see also Man v. Warner Bros. Inc.*, 317 F. Supp. 50, 53 (S.D.N.Y. 1970) (holding that the New York NIL statute "was never intended to apply" to preclude broadcasts of events even absent an NIL release from participants).

The only judicial ruling suggesting otherwise of which Defendants are aware is Judge Wilken's opinion in *O'Bannon* (to which she adhered in *House*) that there might be a right of publicity in a broadcast or that similar allegations by current student-athletes amount to plausible allegations of injury. *See In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 37 F. Supp. 3d 1126, 1140–46 (N.D. Cal. 2014); *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 990 F. Supp. 2d 996, 1005–06 (N.D. Cal. 2013); *House v. NCAA*, 545 F. Supp. 3d 804, 816–17 (N.D. Cal. 2021). That ruling is inconsistent with the vast weight of precedent cited above. *See Marshall*, 111 F. Supp. 3d at 826–27.

The Court should accordingly follow the prevailing judicial consensus, not *O'Bannon*. Doing so is correct as a matter of both law and logic. If mere presence in a sports broadcast conferred a right of publicity, every person depicted in a sporting event—not only players, but

substitutes who never enter the game, coaches, cheerleaders, band members, referees, medical personnel, and even spectators—might try to assert such a right. Requiring licenses from all these people would make broadcasts next to impossible by affording each participant power to veto a broadcast of a game.

      C.    <u>Any Claim Under a State Law Right of Publicity Would Be Preempted by The Copyright Act.</u>

Even if state law attempted to create a right of publicity in broadcasts and rebroadcasts of sports events, that purported right would be preempted under the Copyright Act. 17 U.S.C. § 106. *See, e.g.*, *Melendez,* 50 F.4th at 305–06; *In re Jackson*, 972 F.3d 25, 40 (2d Cir. 2020); *Maloney v. T3 Media, Inc.*, 853 F.3d 1004, 1016 (9th Cir. 2017); *Dryer*, 814 F.3d at 943; *Ray v. ESPN, Inc.*, 783 F.3d 1140, 1144 (8th Cir. 2015); *Laws v. Sony Music Ent., Inc.*, 448 F.3d 1134, 1145 (9th Cir. 2006). The reasons why are straightforward. Broadcasts of sports events are copyrighted audio-visual works. *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 847 (2d Cir. 1997). Section 106 of the Copyright Act vests in the copyright owner the exclusive right to reproduce, distribute, display, and prepare derivative works of the copyrighted game footage. 17 U.S.C. § 106. The rights of the copyright holder thus trump any publicity rights in the broadcasts and preempt any claims seeking to vindicate such rights. *See Motorola, Inc.*, 105 F.3d at 848 n.4 ("[N]o person is entitled to any such right or equivalent right in any such work under" state law); *Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 679 (7th Cir. 1986).

Plaintiffs do not and cannot claim to possess a license, assignment, or other ownership interest in the broadcasts at issue. So their right-of-publicity claims are preempted by the Copyright Act unless they can show that "the defendant manipulated or imitated the plaintiffs' identity or likeness, or used the plaintiffs' identity or likeness to support a product that was independent from the copyrighted work itself." *Melendez*, 50 F.4th at 306 (citations omitted); *see Jackson*, 972 F.3d at 48 (acknowledging limited exemption to evade copyright preemption where NIL is used for

advertising purposes "in a manner that implies the plaintiff's endorsement, sponsorship, or approval" of an entity, product, or opinion, that is independent from the copyrighted work itself); *see also T3Media*, 853 F.3d at 1011; *Dryer*, 814 F.3d at 942; *Ray*, 783 F.3d at 1144. Plaintiffs do not and cannot plausibly make any such allegation here given that their allegations involve the display of game highlights from the original broadcast. Compl. ¶¶ 3, 108–09. Accordingly, even if there were any potential state-law right of publicity at issue here, the Copyright Act would override it.

## IV.   PLAINTIFFS' DERIVATIVE UNJUST ENRICHMENT CLAIM MUST BE DISMISSED.

Like their antitrust claims, Plaintiffs' claim for unjust enrichment (the third claim for relief) must be dismissed. The Complaint provides no hint as to what source of law forms the basis of that claim, but it in all events fails for several reasons.

As an initial matter, courts have held that a plaintiff cannot salvage a failed antitrust claim by simply recharacterizing it as an unjust enrichment claim. *See, e.g.*, *Yong Ki Hong v. KBS Am., Inc.*, 951 F. Supp. 2d 402, 424 (E.D.N.Y. 2013); *Kramer v. Pollock-Krasner Found.*, 890 F. Supp. 250, 257 (S.D.N.Y. 1995). As explained above, Plaintiffs' antitrust claims fail for multiple reasons, which alone requires dismissal of the derivative unjust enrichment claim.

That principle applies with particular force here because Plaintiffs' unjust enrichment claim faces the same obstacles on the merits. First, while the source of law for the claim is unclear, there is no apparent basis for believing the claim is timely. If, for example, Plaintiffs' claim is brought under New York law, the statute of limitations would likely be three years (and, at most, six years). *See, e.g.*, *Ruzhinskaya v. Healthport Techs., LLC*, 311 F.R.D. 87, 109 (S.D.N.Y. 2015). In either case, Plaintiffs' unjust enrichment claim would be time-barred.

Second, ten Plaintiffs' claims would be barred by the *Alston* settlement, which released those ten Plaintiffs' right to bring all claims "for monetary damages of *any kind* . . . under the laws

of *any jurisdiction*." *Alston* Settlement at 11 (emphasis added). There is no basis for arguing that the release does not apply to unjust enrichment claims.

Finally, any unjust enrichment claim would fail on the merits for similar reasons to the antitrust claims. It too is premised on a failed right-of-publicity theory. *See, e.g., Ruffin-Steinback v. dePasse*, 267 F.3d 457, 462–63 (6th Cir. 2001); *Marshall*, 111 F. Supp. 3d at 837. It is also preempted by the Copyright Act, which preempts claims that the defendant was unjustly enriched by use of a protected work of authorship. *See, e.g., Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004); *Monbo v. Nathan*, 623 F. Supp. 3d 56, 112–14 (E.D.N.Y. 2022) (collecting cases); *Gary Friedrich Enterprises, LLC v. Marvel Enterprises, Inc.*, 713 F. Supp. 2d 215, 229 (S.D.N.Y. 2010). So it, too, must be dismissed.

## CONCLUSION

The Complaint should be dismissed in its entirety.

DATED:  October 18, 2024

By: */s/ Whitty Somvichian*
Whitty Somvichian (*pro hac vice*)
Ashley K. Corkery (*pro hac vice*)
Gregory Merchant (*pro hac vice*)
**COOLEY LLP**
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Tel: (415) 693-2000
Fax: (415) 693-2222
wsomvichian@cooley.com
acorkery@cooley.com
gmerchant@cooley.com

Mark Lambert (*pro hac vice*)
3175 Hanover Street
Palo Alto, CA 94304
Tel: (650) 843-5000
mlambert@cooley.com

*Attorneys for Defendant Pac-12 Conference*

By: */s/ Britt M. Miller*
Britt M. Miller (*pro hac vice* pending)
Daniel T. Fenske (*pro hac vice* pending)
**MAYER BROWN LLP**
71 South Wacker Drive
Chicago, IL 60606
Tel: (312) 782-0600
bmiller@mayerbrown.com
dfenske@mayerbrown.com

Gina L. Del Tatto
1221 Avenue of the Americas
New York, NY 10020-1001
Tel: (212) 506-2500
gdeltatto@mayerbrown.com

*Attorneys for Defendant The Big Ten
Conference, Inc.*

Respectfully submitted,

By: */s/ Rakesh N. Kilaru*
Rakesh N. Kilaru (*pro hac vice*)
Tamarra Matthews Johnson (*pro hac vice*)
Calanthe Arat (*pro hac vice*)
Matthew Skanchy (*pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Tel: (202) 847-4000
Fax: (202) 847-4005
rkilaru@wilkinsonstekloff.com
tmatthewsjohnson@wilkinsonstekloff.com
carat@wilkinsonstekloff.com
mskanchy@wilkinsonstekloff.com

*Attorneys for Defendant National Collegiate Athletic
Association*

By: */s/ Angela C. Zambrano*
Angela C. Zambrano (*pro hac vice*)
Natali Wyson (*pro hac vice*)
Chelsea A. Priest (*pro hac vice*)
**SIDLEY AUSTIN LLP**
2021 McKinney Ave., Suite 2000
Dallas, TX 75201
Tel: (214) 981-3300
Fax: (214) 981-3400
angela.zambrano@sidley.com
nwyson@sidley.com
cpriest@sidley.com

Benjamin R. Nagin
787 Seventh Avenue
New York, NY 10019
Tel: (212) 839-5300
Fax: (212) 839-5599
bnagin@sidley.com

*Attorneys for Defendant Big Twelve Conference, Inc.*

By: */s/ Michael S. Sommer*
Michael S. Sommer
**WILSON SONSINI GOODRICH & ROSATI**
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
Tel: (212) 497-7728
msommer@wsgr.com

Kathryn Reilly (*pro hac vice*)
Galen Bellamy (*pro hac vice*)
Michael Krantz (*pro hac vice*)
Natalie West (*pro hac vice*)
**WHEELER TRIGG O'DONNELL LLP**
370 17th Street, Suite 4500
Denver, CO 80202
Tel: (303) 244-1800
Fax: (202) 244-1879
reilly@wtotrial.com
bellamy@wtotrial.com
krantz@wtotrial.com
west@wtotrial.com

*Attorneys for Defendant Southeastern Conference*

By: */s/ Scott P. Cooper*
Scott P. Cooper (*pro hac vice*)
Kyle A. Casazza
Justin B. Cohen
**PROSKAUER ROSE LLP**
2029 Century Park East, Suite 2400
Los Angeles, California 90067-3010
Tel: (310) 557-2900
Fax: (310) 557-2193
scooper@proskauer.com
kcasazza@proskauer.com
jbcohen@proskauer.com

*Attorneys for Defendant Big East Conference, Inc.*

By: */s/ Christopher S. Yates*
Christopher S. Yates (*pro hac vice*)
Aaron Chiu (*pro hac vice* pending)
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Tel: (415) 395-8157
Fax: (415) 395-8095
chris.yates@lw.com

Anna M. Rathbun
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
Tel: (202) 637-2200
anna.rathbun@lw.com

*Attorneys for Defendant Atlantic Coast Conference*