**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MARIO CHALMERS, et al.,

      Plaintiffs,

      v.

NATIONAL COLLEGIATE ATHLETIC
ASSOCIATION a/k/a NCAA, et al.,

      Defendants.

Case No. 1:24-cv-05008-PAE-VF

**REPLY IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS THE AMENDED COMPLAINT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

ARGUMENT .......................................................................................................................... 2

I.     PLAINTIFFS' CLAIMS ARE TIME-BARRED. ...................................................... 2

       A.     Plaintiffs Fail to Plausibly Allege a Continuing Violation. .............................. 2

       B.     The Speculative Damages Rule Does Not Apply. ............................................ 6

       C.     Plaintiffs Are Not Entitled to Equitable Tolling. ............................................. 7

       D.     Plaintiffs' Claims for Injunctive Relief Are Also Barred. ............................... 8

II.    PLAINTIFFS' CLAIMS ARE BARRED BY THE *O'BANNON*
       JUDGMENT AND THE *ALSTON* SETTLEMENT RELEASE. ............................... 8

       A.     *O'Bannon* Forecloses Plaintiffs' Claims for Injunctive Relief. ...................... 8

       B.     *Alston* Forecloses Ten Plaintiffs' Claims for Damages. ............................... 11

III.   PLAINTIFFS HAVE NOT PLAUSIBLY PLEADED INJURY. ............................ 11

       A.     Plaintiffs Do Not Have Any Copyright Interests in Recorded
              Game Footage. ................................................................................................ 12

       B.     Plaintiffs Identify No Basis for Recognizing Any Rights-Of-
              Publicity in the Rebroadcast of NCAA Games. ............................................ 13

IV.    PLAINTIFFS' UNJUST ENRICHMENT CLAIM MUST BE
       DISMISSED. ....................................................................................................... 15

CONCLUSION ................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*A.Q.C. ex rel. Castillo v. United States*,
   656 F.3d 135 (2d Cir. 2011) ............................................................................ 2

*Allen v. Dairy Farmers of Am., Inc.*,
   748 F. Supp. 2d 323 (D. Vt. 2010) ................................................................. 2

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
   603 F.2d 263 (2d Cir. 1979) ............................................................................ 4

*Choh v. Brown Univ.*, No. 3:23-CV-00305-AWT,
   2024 WL 4465476 (D. Conn. Oct. 10, 2024) ................................................. 4

*Conopco v. Campbell Soup Co.*,
   95 F.3d 187 (2d Cir. 1996) .............................................................................. 8

*CSX Transp., Inc. v. Norfolk S. Ry.*,
   114 F.4th 280 (4th Cir. 2024) ......................................................................... 4

*Fiesel v. Bd. of Educ.*,
   675 F.2d 522 (2d Cir. 1982) ........................................................................ 1, 7

*Hanover Shoe, Inc. v. United Shoe Mach. Corp.*,
   392 U.S. 481 (1968) ........................................................................................ 4

*Higgins v. New York Stock Exch., Inc.*,
   942 F.2d 829 (2d Cir. 1991) ............................................................................ 6

*House v. Nat'l Collegiate Athletic Ass'n*,
   545 F. Supp. 3d 804 (N.D. Cal. 2021) ........................................................ 9, 12

*In re Columbia Coll. Rankings Action*, No. 22 CIV. 5945 (PGG),
   2024 WL 1312511 (S.D.N.Y. Mar. 26, 2024) ................................................ 7

*In re Literary Works in Elec. Databases Copyright Litig.*,
   654 F.3d 242 (2d Cir. 2011) .......................................................................... 11

*In re NCAA Grant-In-Aid Cap Antitrust Litig.*,
   375 F. Supp. 3d 1058 (N.D. Cal. 2019) ........................................................ 11

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, No. C 09-1967 CW,
   2013 WL 5979327, (N.D. Cal. Nov. 8, 2013) ............................................... 11

*Kramer v. Pollock-Krasner Found.*,
   890 F. Supp. 250 (S.D.N.Y. 1995) ............................................................... 15

*Madison Square Garden, L.P. v. Nat'l Hockey League*, No. 07-CV-8455 (LAP),
   2008 WL 4547518 (S.D.N.Y. Oct. 10, 2008) ............................................. 5, 8

*Marshall v. ESPN Inc.*,
   111 F. Supp. 3d 815 (M.D. Tenn. 2015) .................................................... 13, 14

*Marshall v. ESPN*,
   668 F. App'x 155 (6th Cir. 2016) ............................................................... 12, 13

**Cases (cont.)**

*Marvel Characters, Inc. v. Simon*,
　310 F.3d 280 (2d Cir. 2002)..................................................................... 8

*Merchant v. Levy*,
　92 F.3d 51 (2d Cir. 1996)......................................................................... 12

*NBA v. Motorola, Inc.*,
　105 F.3d 841 (2d Cir. 1997).............................................................. 13, 15

*NCAA v. Alston*,
　594 U.S. 69 (2021).................................................................................... 7

*O'Bannon v. NCAA*,
　7 F. Supp. 3d 955 (N.D. Cal. 2014) ................................................. 3, 9, 10

*O'Bannon v. NCAA*,
　802 F.3d 1049 (9th Cir. 2015) ............................................................... 10

*Parklane Hosiery Co. v. Shore*,
　439 U.S. 322 (1979)................................................................................. 10

*Pearl v. City of Long Beach*,
　296 F.3d 76 (2d Cir. 2002)........................................................................ 7

*Phillips Petroleum Co. v. Shutts*,
　472 U.S. 797 (1985)................................................................................. 10

*Rooney v. Columbia Pictures Indus., Inc.*,
　538 F. Supp. 211 (S.D.N.Y. 1982) .......................................................... 12

*SL-x IP S.à.r.l. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 21-2697,
　2023 WL 2620041 (2d Cir. Mar. 24, 2023) ......................................... 3, 4, 6

*Smith v. City of N.Y.*, No. 15-CV-4493,
　2016 WL 4574924 (S.D.N.Y. Sept. 1, 2016)........................................... 10

*Smith v. McGinnis*,
　208 F.3d 13 (2d Cir. 2000)......................................................................... 2

*Somerson v. McMahon*,
　956 F. Supp. 2d 1345 (N.D. Ga. 2012) .................................................. 14

*Stouter v. Smithtown Cent. Sch. Dist.*,
　687 F. Supp. 2d 224 (E.D.N.Y. 2010) ...................................................... 2

*TBK Partners, Ltd. v. W. Union Corp.*,
　675 F.2d 456 (2d Cir. 1982)..................................................................... 11

*United States v. Duval*,
　957 F. Supp. 2d 100 (D. Mass. 2013) .................................................... 7, 8

*US Airways, Inc. v. Sabre Holdings Corp.*,
　938 F.3d 43 (2d Cir. 2019)................................................................... 3, 4, 5

*Wal-Mart Stores, Inc. v. Dukes*,
　564 U.S. 338 (2011)................................................................................. 10

**Cases (cont.)**

*Whiteside v. United States*,
    775 F.3d 180 (4th Cir. 2014) ........................................................... 7

*Yong Ki Hong v. KBS Am., Inc.*,
    951 F. Supp. 2d 402 (E.D.N.Y. 2013) ........................................... 15

*Z Techs. Corp. v. Lubrizol Corp.*,
    753 F.3d 594 (6th Cir. 2014) ................................................... 3, 4, 6

*Zacchini v. Scripps-Howard Broad. Co.*,
    433 U.S. 562 (1977) ....................................................................... 13

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
    401 U.S. 321 (1971) .................................................................... 6, 7

**Rules**

Federal Rule of Civil Procedure 23(b)(2) ............................................ 10, 11

## INTRODUCTION

Nothing in Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss (Opp'n), ECF No. 114, cures the fundamental problems with their case.

*First*, the Opposition underscores that Plaintiffs' claims are time-barred. Plaintiffs equivocate on whether their claimed injury stemmed from allegedly being forced to sign away supposed publicity rights many years ago when they were student-athletes, or the NCAA rules that (at the time) barred them from being compensated for their name, image, and likeness (NIL). Either way, Plaintiffs' claimed injury occurred at least a decade ago, which precludes recovery under Second Circuit precedent. Nor do Plaintiffs plausibly invoke any of the narrow exceptions to the limitations period. Most telling is their admission that they *chose* not to file sooner in hopes of a more favorable legal landscape. Opp'n 14–15. A plaintiff "cannot toll or suspend the running of the statute by relying upon the uncertainties of controlling law." *Fiesel v. Bd. of Educ.*, 675 F.2d 522, 524–25 (2d Cir. 1982) (citation omitted).

*Second*, most of Plaintiffs' claims are precluded by res judicata and/or prior releases. Plaintiffs say many things about *O'Bannon*, but none erase the clear identity between Plaintiffs' claims here and what was (or could have been) litigated to final judgment in *O'Bannon*. It is likewise undisputed that ten Plaintiffs were members of the *Alston* damages settlement class and released any compensation-related claims.

*Third*, Plaintiffs cannot cure their failure to plausibly plead injury. The judicial consensus is that participants in a sports broadcast have no copyright interests or rights of publicity in the broadcast and therefore cannot establish injury from the broadcast owner's publication or republication of game footage. Plaintiffs' only response is that this Court should join the one outlier district court that wrongly concluded otherwise in accepting a theory of injury that, if accepted here, would confirm the untimeliness of Plaintiffs' claims.

The Amended Complaint should be dismissed in its entirety.

**ARGUMENT**

**I.    PLAINTIFFS' CLAIMS ARE TIME-BARRED.**

Plaintiffs do not (and cannot) meaningfully dispute that their claims are time-barred. They accordingly attempt to invoke a series of exceptions to the statute of limitations. *See* Opp'n 3–15. But such exceptions are "a drastic remedy applicable only in rare and exceptional circumstances." *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 144 (2d Cir. 2011) (quotations omitted); *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000). No such circumstances exist here. *See* Mem. of Law ISO Defs.' Mot. Dismiss (MTD), ECF No. 108, 9 (collecting cases addressing limitations defenses at the motion to dismiss phase).

**A.    Plaintiffs Fail to Plausibly Allege a Continuing Violation.**

While Plaintiffs primarily rely on the continuing violation exception, *see* Opp'n 3–11, that "doctrine is heavily disfavored in the Second Circuit and courts have been loath to apply it absent a showing of compelling circumstances." *Allen v. Dairy Farmers of Am., Inc.*, 748 F. Supp. 2d 323, 350 (D. Vt. 2010) (quoting *Stouter v. Smithtown Cent. Sch. Dist.*, 687 F. Supp. 2d 224, 230 (E.D.N.Y. 2010)). Plaintiffs fail to meet this burden.

The key inquiry is the timing of the *act causing injury* rather than any ongoing *effects* of that act. Plaintiffs' complaint begins by alleging that their injury occurred when they were supposedly forced, as student-athletes, "to give up exceedingly valuable [NIL] rights" and "ownership rights related to images and footage of their athletic performances." Am. Compl., ECF No. 104, ¶ 1. Plaintiffs now run away from their complaint and equivocate as to whether they "actually signed any forms." Opp'n 8; *but see* Am. Compl. ¶ 149 (Plaintiffs "sign[ed] a contract that stripped them of their legal rights.")*,* ¶¶ 120–23 (alleging that the Student-Athlete Statement is "absolutely required" and that the Statements "signed by Plaintiffs" included the provision at

issue). But this pivot changes nothing. The only other allegedly injurious conduct Plaintiffs identify is the set of NCAA rules that prohibited them from receiving compensation for their NIL, *see, e.g.*, Opp'n 10, *which only applied to them when they were student-athletes*. Plaintiffs point to no rule or policy currently in effect (or within the last four years) that prevented them from receiving compensation for their NIL because there is none. *See O'Bannon v. NCAA*, 7 F. Supp. 3d 955, 983–84 (N.D. Cal. 2014) (finding that "former student-athletes are already permitted to receive compensation for the use of their names, images, and likenesses in game re-broadcasts and other archival footage of their college performances as long as they enter into such agreements after they leave school").

Accordingly, whether due to an alleged contract or prior NCAA rules, any alleged conduct and resulting injury necessarily happened when Plaintiffs were still enrolled in college—well outside the limitations period. Plaintiffs' contention that they are harmed "each time the NCAA and its co-conspirators use footage or images of Plaintiffs' performances for commercial purposes," Opp'n 5, is at best a complaint about the supposed continuing *effect* of the alleged anticompetitive conduct that occurred many years ago. Under Second Circuit precedent, Plaintiffs' lack of compensation today is merely a downstream effect of the original alleged "coercion" that occurred while they were student-athletes, *id*. at 8—not a "new and accumulating *injury*" stemming from any overt act that occurred within the limitations period. *US Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43, 68 (2d Cir. 2019) (emphasis added). Nor can Plaintiffs cast any continued lack of compensation for use of their NIL by Defendants as a new overt act that restarted the limitations period. *SL-x IP S.à.r.l. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 21-2697, 2023 WL 2620041, at *3 (2d Cir. Mar. 24, 2023) (rejecting argument that sale to Defendants restarted the limitations period because the sale "was merely a 'manifestation' of Defendants' alleged prior agreement to freeze SL-x out of the market"). *Z Techs. Corp. v. Lubrizol Corp.*, 753

F.3d 594, 601 (6th Cir. 2014) ("[P]rofits, sales, and other benefits accrued as a result of an initial wrongful act . . . are uniformly viewed as 'ripples' caused by the initial injury, not as distinct injuries themselves." (collecting cases)).

Plaintiffs try to distract by highlighting decades-old and inapposite cases that barely address the continuing violation doctrine. *See* Opp'n 3–6. But none of those factually distinct cases change the central point that Plaintiffs can only recover for an overt act causing injury within the limitations period. Here, if Plaintiffs are claiming injury from contracts they allegedly signed when they were student-athletes, then the Second Circuit has made clear that continued performance of a contract executed outside of the limitations period is not a new overt act. *See US Airways*, 938 F.3d at 67–68 (distinguishing *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481 (1968) on this basis). And if the claimed injury is instead the now-obsolete NCAA rules that precluded NIL compensation when Plaintiffs were student-athletes, then both the allegedly injurious act and the injury occurred at least a decade ago.[1]

Unlike the old cases Plaintiffs trumpet, the on-point caselaw supports Defendants. In *Choh v. Brown Univ.*, No. 3:23-CV-00305-AWT, 2024 WL 4465476 at *12 (D. Conn. Oct. 10, 2024), Brown's failure to give the plaintiff a scholarship in later years was not a new antitrust violation, but merely a downstream effect of the plaintiff's earlier choice to enroll at Brown (which as part of the Ivy League Agreement did not permit athletic scholarships). So too here: Taking their allegations as true, Plaintiffs did not receive compensation related to archival footage either

---

[1] Plaintiffs' effort to rely upon *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) is equally unavailing and runs headlong into *US Airways*. Plaintiffs claim that agreements and rules from their long-ago college years resulted in an ongoing lack of compensation. The fact that Plaintiffs continue to complain about a lack of compensation for NIL based on old rules and agreements is not a new overt act that restarts the limitations period. *US Airways*, 938 F.3d at 68–69 (harm arising from pre-limitation period agreements does not re-start the limitations period); *SL-x IP S.à.r.l.*, 2023 WL 2620041, at *3; *CSX Transp., Inc. v. Norfolk S. Ry.*, 114 F.4th 280, 290 (4th Cir. 2024).

because of contracts they allegedly signed over a decade ago or rules that last applied to them over a decade ago.

Plaintiffs misstate the law in attempting to create a "contract-execution rule" that allows the limitations period to run "only where the plaintiff freely chose to enter into a binding contract." Opp'n 9. They rely on *Madison Square Garden, L.P. v. National Hockey League*, No. 07-CV-8455 (LAP), 2008 WL 4547518 (S.D.N.Y. Oct. 10, 2008), to argue that there "the plaintiff validly contractually agreed to the restrictions at issue." Opp'n 11. But neither that case nor any others Plaintiffs cite suggest that the validity of a contract is at all relevant to the continuing violation analysis. *Madison Square Garden*, for example, did not turn on whether the contracts were *valid* when signed; what mattered was simply that the restrictions did not *change* during the limitations period, meaning that there were no "new and independent" acts that restarted the limitations period. 2008 WL 4547518, at *10.

Last, Plaintiffs err in contending that the statute of limitations should not run from the alleged signing of a contract "where, as here, the purported contract was merely an instrument of a preexisting illegal horizontal price-fixing agreement and/or exploitation of illegally obtained monopoly power." Opp'n 11. This is just another failed effort to create a "valid contract-execution" exception that would swallow the general rule of enforcing the limitations period. In *every* antitrust case where the supposed continuing violation arises from a contract, the contract at issue is an "instrument" of an alleged antitrust violation. In *US Airways*, for example, the plaintiff alleged that the contract in question was the product of the defendant's alleged antitrust violations: monopolization and horizontal agreements with the plaintiff's competitors. 983 F.3d at 51–52. Nor can Plaintiffs distinguish *US Airways* by claiming that the contracts here were involuntary or otherwise illegal, *see* Opp'n 8, because the *US Airways* plaintiffs made the same argument (and lost). *See* 938 F.3d at 51 (citing trial testimony that plaintiff "had no choice but to accept" contract).

In sum, the point is not, as Plaintiffs suggest, "that a monopolist is immune from liability for the damages it causes so long as it obtained monopoly power more than four years ago." Opp'n 6. That is just a strawman. The relevant point is that a plaintiff cannot wait a decade (or more) after an alleged injury to sue and then end-run the statute of limitations based on the supposed continuing effects of that injury. "This is precisely the type of conduct that the statute of limitations is designed to prevent—parties sleeping on their rights." *Z Techs.*, 753 F.3d at 603 ("[T]he statute of limitations period is not extended under the continuing violations doctrine if the plaintiff had actual knowledge of the initial violation and suffered an injury." (citation omitted)).

B.    The Speculative Damages Rule Does Not Apply.

The speculative damages rule, Opp'n 12–13, likewise does not salvage Plaintiffs' claims. That exception applies only if the future damages were so uncertain at an earlier date that the plaintiff could not have recovered in an earlier suit. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 340 (1971) (explaining that the purpose of the speculative damages exception is to ensure that damages are not "forever incapable of recovery"); *Higgins v. New York Stock Exch., Inc.*, 942 F.2d 829, 832 (2d Cir. 1991) (exception applies only in "the rare case in which the damages caused by an antitrust injury are so speculative that the court is unwilling to estimate them" (citation omitted)). As long as the alleged damages are "calculable," even if "perhaps uncertain," the speculative damages exception does not apply. *SL-x IP S.à.r.l.*, 2023 WL 2620041, at *3.

Here, the long history of litigation over damages for student-athlete compensation demonstrates that any alleged damages are, in fact, calculable, and do not excuse Plaintiffs' delay in pursuing their claims. *See* MTD 3–8. Furthermore, even if it were true that Plaintiffs did not know when they signed their Student-Athlete Agreements "whether they would play in games, whether recordings of their footage would be valuable for commercial use, or whether the NCAA

or its members and co-conspirators would use such footage for commercial purposes," Opp'n at

12–13, any uncertainty has long since passed. The speculative damages exception is not a blank

check that allows Plaintiffs to sue at any point in the future. *See Zenith*, 401 U.S. at 339–40

(explaining that, if the speculative damages exception applies, the plaintiff may sue "at any time

within four years from the date they were inflicted," *i.e.*, become calculable (citations omitted)).

C.    Plaintiffs Are Not Entitled to Equitable Tolling.

Plaintiffs' effort to invoke equitable tolling mischaracterizes the narrow scope of that

doctrine. "[W]hile equitable tolling may apply where a plaintiff '"show[s] that it would have been

*impossible* for a reasonably prudent person to learn" about his or her cause of action,'" Plaintiffs

have not even attempted to show that any alleged misrepresentation by the NCAA would have

been "impossible to detect" until four years ago. *In re Columbia Coll. Rankings Action*, No. 22

CIV. 5945 (PGG), 2024 WL 1312511, at *13 (S.D.N.Y. Mar. 26, 2024) (quoting *Pearl v. City of

Long Beach*, 296 F.3d 76, 85 (2d Cir. 2002) (cleaned up) (emphasis in original)).

Rather, Plaintiffs admit they *knew* they could sue and that they were members of the classes

in *O'Bannon* and/or *Alston*, and chose *not* to bring suit because they did not believe they could

win on this precise claim until the Supreme Court decided *NCAA v. Alston*, 594 U.S. 69 (2021).

Opp'n 14–15. Crediting that version of events, Plaintiffs still offer no explanation for why they

waited three years after *Alston* (and only after the announcement of a settlement in *House v. NCAA*)

to sue. But more importantly, the law precludes this kind of sandbagging. *Fiesel*, 675 F.2d at 524–

25 ("[T]he statute of limitations cannot be made to depend upon the constantly shifting state of the

law, and a [litigant] cannot toll . . . the statute by relying upon the uncertainties of controlling law."

(citation omitted)); *see also Whiteside v. United States*, 775 F.3d 180, 185 (4th Cir. 2014)

("Equitable tolling [] may not be applied where . . . the only impediment to timely filing was the

discouragement felt by petitioner when calculating his odds of success."); *United States v. Duval*,

957 F. Supp. 2d 100, 117 (D. Mass. 2013).

    D.    <u>Plaintiffs' Claims for Injunctive Relief Are Also Barred.</u>

Plaintiffs contend that the four-year statute of limitations does not apply to their claims for injunctive relief. Opp'n 15. But even for injunctive relief claims, "where the conduct forming the basis for the Complaint occurs outside of the analogous statute of limitations period, the doctrine of laches presumptively bars a plaintiff's claims absent a showing that delay was excusable and caused no prejudice to the defendant." *Madison Square Garden*, 2008 WL 4547518, at *10 (citing *Conopco v. Campbell Soup Co.*, 95 F.3d 187, 191 (2d Cir. 1996)). Under that presumption, it is Plaintiffs' burden to show why their claims are *not* time barred. *See Conopco*, 95 F.3d at 191. Plaintiffs have not met that burden.

## II.    PLAINTIFFS' CLAIMS ARE BARRED BY THE *O'BANNON* JUDGMENT AND THE *ALSTON* SETTLEMENT RELEASE.

Plaintiffs admit they are *O'Bannon* class members and that many of them are also bound by the *Alston* damages settlement. Opp'n 14. But they offer no valid justification for their effort to relitigate the claims from those cases.

    A.    <u>*O'Bannon* Forecloses Plaintiffs' Claims for Injunctive Relief.</u>

"Under the doctrine of res judicata, or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were *or could have been raised* in that action." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286–87 (2d Cir. 2002) (emphasis added). The operative complaint in *O'Bannon* raised the same claims that Plaintiffs bring here: a challenge to the ongoing use of broadcast footage involving former student athletes in advertisements and other promotional materials. *See* MTD 14–15. While Plaintiffs blithely assert that "the terms of *O'Bannon* are very different from the claims asserted here," Opp'n 18, they do not substantiate that assertion or address the reality that the *O'Bannon* plaintiffs *could have* made the same arguments as Plaintiffs here. And while Plaintiffs contend that their case turns on

"conduct occurring after the *O'Bannon* complaint," *id*. 18, that argument is impossible to square with the fact that their alleged injuries occurred while they were students, *see supra* Part I.

Plaintiffs are also precluded from relitigating whether NCAA rules bar them from receiving compensation *today*. Judge Wilken actually *ruled on* restrictions on compensation for NIL for former players after their eligibility and found that the plaintiffs had "not presented sufficient evidence to show that the NCAA has imposed any restraints in this submarket." *O'Bannon*, 7 F. Supp. 3d at 998. Thus, under the tests for *both* issue and claim preclusion, *O'Bannon* forecloses Plaintiffs' claims for injunctive relief.

Plaintiffs' argument that *O'Bannon* "was not intended to be preclusive," Opp'n 18, likewise collapses upon scrutiny. Plaintiffs repeatedly quote from Judge Wilken's opinion at the motion to dismiss stage in *House v. NCAA*, *see* Opp'n 18–19, but that portion of the opinion *did not address res judicata.*[2] Instead, it addressed whether the court should reject the plaintiffs' claims under the doctrine of *stare decisis*. *See* 545 F. Supp. 3d 804, 811–15 (N.D. Cal. 2021). The only mention of res judicata appears in a footnote addressing an argument made "in passing" that one plaintiff's claims were barred by that doctrine. *Id.* at 819 n.5. But Judge Wilken explicitly *declined* to resolve that argument at that stage in the case. *Id.*

Plaintiffs fare no better in arguing that the *O'Bannon* injunction is not preclusive as to the Conference Defendants in this action because the NCAA was the "losing party" in *O'Bannon*. Opp'n 17. In the relevant market Plaintiffs allege here—the market for the supply of game footage depicting former student-athletes' athletic performances—the court held *against the* O'Bannon *plaintiffs* on their antitrust claims. *Compare* Am. Compl. ¶ 48 (alleging the relevant market is "the supply market for images and footage of student-athletes' past athletic performances"), *with*

---

[2] Although Plaintiffs cite page 819 of *House*, the quotations they rely on appear on page 812.

*O'Bannon*, 7 F. Supp. 3d at 998 (holding the plaintiffs failed to show the NCAA "imposed any restraints in th[e] submarket" for licensing former student-athletes' NIL in "game re-broadcasts, highlight clips, and other archival game footage, both for entertainment and to advertise products"). That suffices for nonmutual collateral estoppel. *See Smith v. City of N.Y.*, No. 15-CV-4493, 2016 WL 4574924, at *13 (S.D.N.Y. Sept. 1, 2016) ("[N]on-mutual defensive collateral estoppel is designed to prevent precisely this type of attempt to relitigate an issue by 'merely switching adversaries.'" (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329 (1979))).

Last, giving res judicata effect to the *O'Bannon* injunction would not violate due process. *See* Opp'n 19 (claiming that the issue is "unsettled"). There is no due process problem with giving res judicata effect to the class judgment, because there is no reasonable argument *O'Bannon* had inadequate class representatives. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). The named plaintiff, Ed O'Bannon, was himself a former basketball player at UCLA at the time of his suit. *O'Bannon v. NCAA*, 802 F.3d 1049, 1055 (9th Cir. 2015). The other plaintiffs were "current and former student-athletes, all of whom play or played for an FBS football or Division I men's basketball team between 1956 and the present," some of whom "went on to play professional sports after they left college." *O'Bannon*, 7 F. Supp. 3d at 965. The *O'Bannon* plaintiffs had just as much incentive as Plaintiffs here in obtaining the greatest possible measure of relief on their NIL claims. *See In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, No. C 09-1967 CW, 2013 WL 5979327, at *5–7 (N.D. Cal. Nov. 8, 2013) (finding named plaintiffs adequate).

That Plaintiffs could not opt out of the class makes no difference. "In the context of a class action *predominantly for money damages* . . . absence of notice and opt out violates due process." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 363 (2011) (emphasis added). But that is not true of mandatory *injunctive* relief class actions under Federal Rule of Civil Procedure 23(b)(2). The assumption underlying that Rule is that "notice has no purpose when the class is mandatory, and

that depriving people of their right to sue in this manner complies with the Due Process Clause." *Id.* Plaintiffs do not and cannot argue that Rule 23 is unconstitutional in this respect.

B.    *Alston* Forecloses Ten Plaintiffs' Claims for Damages.

Ten Plaintiffs seek to evade the *Alston* release, which indisputably applies, by arguing that their claims do not arise out of the "identical factual predicate." Opp'n 20. Their efforts fail.

Contrary to Plaintiffs' suggestion, *Alston* was not a narrow challenge to "limits on education-related benefits" that was solely "focus[ed] on challenges to NCAA Bylaw 15.1." Opp'n 21. While that was how the case ended, it was not how it began. As Judge Wilken explained in her opinion resolving the injunctive relief claims, the plaintiffs "challenge[d] the *current, interconnected set of NCAA rules that limit the compensation they may receive in exchange for their athletic services*." *In re NCAA Grant-In-Aid Cap Antitrust Litig.* (*Alston*), 375 F. Supp. 3d 1058, 1062 (N.D. Cal. 2019) (emphasis added). The claims addressed here implicate the same (albeit narrower) factual predicate. *See In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 248 (2d Cir. 2011) (courts must not "take[] an overly narrow view of the factual predicate" underlying the claims); *see also TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456, 460 (2d Cir. 1982) (a class action release can bar future suits "even though the claim was not presented and might not have been presentable in the class action").

III.    **PLAINTIFFS HAVE NOT PLAUSIBLY PLEADED INJURY.**

Plaintiffs seek to rewrite their complaint in rebutting Defendants' arguments about injury, now claiming that they challenge the lost "opportunity" to receive greater compensation *for their athletic services*, which they claim they would have received absent the challenged conduct. Opp'n 24–26, 33. Any such claim would have accrued when Plaintiffs were student-athletes, and any

statute of limitations ran years ago.[3] *See supra* Part I.

Beyond this new and time-barred claim, Plaintiffs cannot establish injury from alleged lost opportunities to profit from recordings of their old athletic performances. *See, e.g.*, Am. Comp. ¶¶ 5–7, 13, 82, 105; Opp'n 2–3, 6 n.3, 12. As both *Marshall* and *Rooney* make clear, an antitrust plaintiff cannot satisfy the injury requirement "when the plaintiff has no legal right to receive the benefit it allegedly lost due to the defendant's conduct." *Antitrust Law Developments* 802 (9th ed. 2022) (citing cases); *see also* MTD 18–19; *Marshall v. ESPN*, 668 F. App'x 155, 157 (6th Cir. 2016); *Rooney v. Columbia Pictures Indus., Inc.*, 538 F. Supp. 211, 230 (S.D.N.Y. 1982), *aff'd*, 714 F.2d 117 (2d Cir. 1982). Whether characterized as copyright or rights of publicity, Plaintiffs have no legally-protected interests that are infringed by the NCAA's rebroadcast of prior game footage.

A.      Plaintiffs Do Not Have Any Copyright Interests in Recorded Game Footage.

Plaintiffs offer virtually no response to the argument that they lack an ownership interest in broadcast footage. This question is governed by the Copyright Act itself, not by preemption principles. *See Merchant v. Levy*, 92 F.3d 51, 55 (2d Cir. 1996) ("Unlike a case where a dispute as to copyright ownership arises under an agreement between the parties, resolution of which depends on state contract law, . . . copyright ownership by reason of one's status as a co-author of a joint work arises directly from the terms of the Copyright Act itself."); *see also* MTD 20. Nothing in the Act confers such rights.

Plaintiffs feint at the idea that the work-for-hire doctrine applies, Opp'n 31, but it does not.

---

[3] Plaintiffs' lost-opportunity theory relates solely to their time as student-athletes, since it rests on their assertion that, absent the NCAA's bylaws, Conferences and NCAA Member Institutions would compete for "student-athlete *labor*" by offering compensation "beyond the minimum to which student-athletes were legally entitled." Opp'n 26 (emphasis added). Judge Wilken's decision in *House* rests on the same premise. *See* 545 F. Supp. 3d 804, 816–17 (N.D. Cal. 2021).

Plaintiffs ignore *NBA v. Motorola, Inc.*, 105 F.3d 841 (2d Cir. 1997), which  held that athletic performances are not "work[s] of authorship" subject to copyright protection in the first instance, *see id.* at 846–47, and thus eliminates any possible argument that the work-for-hire doctrine applies. The Second Circuit also rejected Plaintiffs' very argument here, *see* Opp'n 32—that athletes have an ownership interest in copyrighted game footage because their athletic performances provide the "primary value" of the recorded game footage, *see Motorola*, 105 F.3d at 847 (amendments to the Copyright Act made clear "that it is the broadcast, not the underlying game, that is the subject of copyright protection.").

      B.    <u>Plaintiffs Identify No Basis for Recognizing Any Rights-Of-Publicity in the Rebroadcast of NCAA Games.</u>

Plaintiffs also fail to establish that they have any enforceable publicity rights in rebroadcasts of NCAA game footage. The *Marshall* opinions squarely address this issue, canvassing the established judicial consensus and concluding that participants in a sports broadcast do not have rights of publicity, and thus cannot establish injury. *Marshall*, 668 F. App'x at 157; *Marshall v. ESPN Inc.*, 111 F. Supp. 3d 815, 834–35 (M.D. Tenn. 2015). Plaintiffs' effort to dodge these opinions by citing Judge Wilken's opinion in *House* fails because Plaintiffs claims are fundamentally about rights to broadcast footage, not lost compensation for labor during their time as student-athletes. *See, e.g.*, Am. Compl. ¶¶ 58, 80–82. As explained above, if Plaintiffs *were* trying to raise a similar labor-compensation claim as in *House*, it would be well out of time.

Plaintiffs' remaining arguments also miss the mark. Contrary to their suggestion, the Supreme Court in *Zacchini* did not suggest that players or performers, in addition to event producers, have publicity rights in the broadcast of a sports event. *See* Opp'n 27 (citing *Zacchini v. Scripps-Howard Broad. Co.*, 433 U.S. 562 (1977)); *cf.* MTD 21. Unlike Plaintiffs, the human cannonball performer in *Zacchini* was also the event's *producer*. 433 U.S. at 563–64, 576. Thus, "[i]t is a mistake . . . to read *Zacchini* as supporting a right of publicity by anyone who performs

in an event produced by someone else." *Marshall*, 111 F. Supp. 3d at 828–29. And despite asserting that "many states" recognize such publicity rights, Opp'n 28, Plaintiffs do not actually name any. Indeed, Plaintiffs still fail to identify which state laws are applicable, let alone cite a single case recognizing publicity rights in the rebroadcast of game footage. That "is unsurprising since it appears virtually all courts in jurisdictions that have decided the matter under their respective laws have held to the contrary for a variety of reasons." *See Marshall*, 111 F. Supp. 3d at 825–26 (citing cases); *see also* MTD 21–22.

Plaintiffs also fail to show that any claim based on infringement of such a hypothetical right would survive copyright preemption. Courts have held repeatedly that publicity claims based on the mere reproduction of copyrighted works—including those depicting an athlete's in-game performance—are preempted by the Copyright Act. *See* MTD 22–24 (citing cases). While Plaintiffs urge the Court to ignore these cases as inapplicable based on their alleged lack of consent to the commercial use of their NIL, they cite no authority establishing that consent in any way changes the preemption analysis.[4] For good reason—right-of-publicity claims may be preempted by the Copyright Act *despite* such allegations. *See Somerson v. McMahon*, 956 F. Supp. 2d 1345, 1354–56 (N.D. Ga. 2012) (holding that athlete's right-of-publicity claim based on reproduction of recorded athletic performances was preempted, despite disputes regarding plaintiff's alleged consent to initial recording, because the court "has not considered [such] facts and need not do so in order to rule on [defendant's] motion to dismiss").

---

[4] While Plaintiffs allege they did not validly assign any publicity rights to Defendants, *see* Am. Compl. ¶¶ 123–30, they never allege that they objected to or were unaware that the NCAA games they played in were recorded and/or broadcasted. Nor could such an allegation be plausibly inferred. In any event, even if relevant to the preemption analysis, any claim premised on the allegation that Plaintiffs did not consent to the initial recordings or broadcasts of the games they played in would have expired long ago since Plaintiffs played in games that occurred between 8 and 30 years ago.

Finally, Plaintiffs are wrong in their contention that there is no preemption because their athletic performances are not independently copyrightable. *See* Opp'n 32–33. *Motorola* squarely rejected that position:

> [O]nce a performance is reduced to tangible form, there is no distinction between the performance and the recording of the performance for the purposes of preemption under [the Copyright Act]. Thus, if a [basketball] game were not broadcast or were telecast without being recorded, the [p]layers' performances similarly would not be fixed in tangible form and their rights of publicity would not be subject to preemption. By virtue of being videotaped, however, the [p]layers' performances are fixed in tangible form, *and any rights of publicity in their performances that are equivalent to the rights contained in the copyright of the telecast are preempted.*

105 F.3d at 849 (emphasis added and citation omitted). Copyright "preemption bars state law misappropriation claims with respect to uncopyrightable as well as copyrightable elements" of a protected work. *Id.*

## IV. PLAINTIFFS' UNJUST ENRICHMENT CLAIM MUST BE DISMISSED.

Plaintiffs have no independent defense of their unjust enrichment claim beyond the others in their complaint. *See* Opp'n 34–35. Plaintiffs cannot revive their failed antitrust claims by repackaging them as an unjust enrichment claim. *See Yong Ki Hong v. KBS Am., Inc.*, 951 F. Supp. 2d 402, 424 (E.D.N.Y. 2013); *Kramer v. Pollock-Krasner Found.*, 890 F. Supp. 250, 257 (S.D.N.Y. 1995).

## CONCLUSION

The Amended Complaint should be dismissed in its entirety.

DATED: December 23, 2024                    Respectfully submitted,

By: */s/ Whitty Somvichian*                    By: */s/ Rakesh N. Kilaru*
Whitty Somvichian (*pro hac vice*)          Rakesh N. Kilaru (*pro hac vice*)
Ashley K. Corkery (*pro hac vice*)          Tamarra Matthews Johnson (*pro hac vice*)
Gregory Merchant (*pro hac vice*)           Calanthe Arat (*pro hac vice*)
**COOLEY LLP**                              Matthew Skanchy (*pro hac vice*)
3 Embarcadero Center, 20th Floor            **WILKINSON STEKLOFF LLP**
San Francisco, CA 94111                     2001 M Street NW, 10th Floor
Tel: (415) 693-2000                         Washington, DC 20036

Fax: (415) 693-2222
wsomvichian@cooley.com
acorkery@cooley.com
gmerchant@cooley.com

Mark Lambert (*pro hac vice*)
3175 Hanover Street
Palo Alto, CA 94304
Tel: (650) 843-5000
mlambert@cooley.com

*Attorneys for Defendant*
*Pac-12 Conference*

By: */s/ Britt M. Miller*
Britt M. Miller (*pro hac vice*)
Daniel T. Fenske (*pro hac vice*)
**MAYER BROWN LLP**
71 South Wacker Drive
Chicago, IL 60606
Tel: (312) 782-0600
bmiller@mayerbrown.com
dfenske@mayerbrown.com

Gina L. Del Tatto
1221 Avenue of the Americas
New York, NY 10020-1001
(212) 506-2500
gdeltatto@mayerbrown.com

*Attorneys for Defendant The Big Ten*
*Conference, Inc.*

By: */s/ Michael S. Sommer*
Michael S. Sommer
**WILSON SONSINI GOODRICH &**
**ROSATI**
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
Tel: (212) 497-7728
msommer@wsgr.com

Kathryn Reilly (*pro hac vice*)
Galen Bellamy (*pro hac vice*)
Michael Krantz (*pro hac vice*)

Tel: (202) 847-4000
Fax: (202) 847-4005
rkilaru@wilkinsonstekloff.com
tmatthewsjohnson@wilkinsonstekloff.com
carat@wilkinsonstekloff.com
mskanchy@wilkinsonstekloff.com

*Attorneys for Defendant National Collegiate Athletic*
*Association*

By: */s/ Natali Wyson*
Natali Wyson (*pro hac vice*)
Angela C. Zambrano (*pro hac vice*)
Chelsea Ann Priest (*pro hac vice*)
**SIDLEY AUSTIN LLP**
2021 McKinney Ave., Suite 2000
Dallas, TX 75201
Tel: (214) 981-3300
Fax: (214) 981-3400
nwyson@sidley.com
angela.zambrano@sidley.com
cpriest@sidley.com

Benjamin R. Nagin
787 Seventh Avenue
New York, NY 10019
Tel: (212) 839-5300
Fax: (212) 839-5599
bnagin@sidley.com

*Attorneys for Defendant The Big 12 Conference, Inc.*

By: */s/ Christopher S. Yates*
Christopher S. Yates (*pro hac vice*)
Aaron Chiu (*pro hac vice* pending)
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Tel: (415) 395-8157
Fax: (415) 395-8095
chris.yates@lw.com

Anna M. Rathbun
555 Eleventh Street NW, Suite 1000

16

Natalie West (*pro hac vice*)
**WHEELER TRIGG O'DONNELL LLP**
370 17th Street, Suite 4500
Denver, CO 80202
Tel: (303) 244-1800
Fax: (202) 244-1879
reilly@wtotrial.com
bellamy@wtotrial.com
krantz@wtotrial.com
west@wtotrial.com

*Attorneys for Defendant Southeastern
Conference*

By: */s/ Scott P. Cooper*
Scott P. Cooper (*pro hac vice*)
Kyle A. Casazza
**PROSKAUER ROSE LLP**
2029 Century Park East, Ste 2400
Los Angeles, CA 90067
Tel: (310) 284-5677
scooper@proskauer.com
kcasazza@proskauer.com

*Attorneys for Defendant Big East Conference,
Inc.*

Washington, DC 20004
Tel: (202) 637-2200
anna.rathbun@lw.com

*Attorneys for Defendant Atlantic Coast Conference*